830 P.2d 854

**STATE of Arizona, Appellee,**

v.

**Floyd Orville PETERSON, Appellant.**

**No. 1 CA–CR 89–1299.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 5, 1991.

As Corrected Sept. 5, 1991.

Review Denied June 16, 1992.*

---

* Corcoran and Martone, JJ., of the Supreme Court, voted to grant review.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

Kathleen A. Kelly, Phoenix, for appellant.

## OPINION

CLABORNE, Presiding Judge.

Does the "good faith" exception to the exclusionary rule permit the introduction of evidence obtained through an invalid arrest warrant? The trial court answered in the affirmative. Under the circumstances presented in this case, we reverse.

Floyd Orville Peterson (appellant) was charged with theft of property with a value in excess of $1,000.00, a class 3 felony in violation of A.R.S. § 13–1802. A jury found appellant guilty of one count of knowingly possessing property of another with a value of $500.00 or more, but less than $1,000.00, a class 4 felony. The trial court suspended the imposition of sentence and placed appellant on probation for two years.

Before trial, appellant moved to suppress evidence found in his home on the ground that it was the fruit of an illegal arrest. The trial court denied the motion and, after conviction, the appellant appealed challenging this ruling.

## FACTUAL BACKGROUND

On September 12, 1987, a caretaker reported that the home of John Jackson located outside of Flagstaff had been burglarized sometime within the preceding ten days. Various household items, including a commercial meat slicer, a milk separator, and a dinette set, were determined to have been stolen. Investigation of the case was assigned to Detective Gilbert Moreno of the Coconino County Sheriff's Department. The detective focused on appellant as a possible suspect because he and a compan-

ion had toured the Jackson property with a real estate agent on September 10.

When the officer ran a computer check with the Arizona Criminal Information Center (ACIC), he received information that appellant was the subject of an outstanding arrest warrant, *issued in 1982*, for failure to return rental property. The detective confirmed the existence of the warrant by having a fellow officer check with the originating agency, the Flagstaff Police Department. The detective did not attempt to contact the Flagstaff Justice Court which had issued the warrant. Detective Moreno accompanied four other officers to appellant's cabin to effect the arrest on the 1982 warrant. Officer Moreno testified that, by participating in the arrest, he hoped that he would be able to observe property stolen in the burglary of the Jackson residence when he was inside appellant's cabin.

While inside the cabin at the time of the arrest, Detective Moreno observed a milk separator, a meat slicer, and a dinette set similar to those reported stolen from the Jackson home. The detective incorporated this information, along with a report of the property reported stolen and the fact that appellant had been on the Jackson premises prior to the discovery of the break-in, in a search warrant affidavit presented to a superior court judge. The search warrant was issued and served on October 28. The property previously observed by Detective Moreno was seized, identified by John Jackson, and ultimately introduced as evidence at trial.

Testimony at the hearing on appellant's motion to suppress focused on the 1982 arrest warrant. Harry W. Bailey, a records custodian for the Flagstaff Police Department, testified that the arrest warrant had been quashed and removed from the system in 1982. He said, "[S]omehow, this warrant re-appeared in our records section on 2–13 of '87, and it was re-entered [in the computer system]." According to Bailey, the police department never determined how or why the warrant re-appeared for entry into the computer system. Bailey said: "It's an error on our part as far as putting it back in."

In response to the trial judge's inquiry, the state conceded that the arrest warrant was invalid and the fruits of the arrest, including Detective Moreno's observations at appellant's cabin, would have to be suppressed unless the court found that the arrest was made in "good faith" reliance on the existence of the warrant. After receiving supplemental briefing on the issue of good faith, the trial judge denied appellant's motion without further comment.

## DISCUSSION

Appellant argues that the trial court erred in not granting his motion to suppress the evidence seized at his home. He contends that because the arrest warrant used to gain access to his home was invalid, the search warrant issued on the basis of information gained through the arrest warrant was likewise invalid. As such, appellant argues that the evidence seized in his home should have been suppressed.

The police may not arrest an individual absent probable cause. U.S. Const. amend IV. Probable cause to arrest exists if the police have "reasonable grounds to believe that an offense is being or has been committed by the person arrested...." *State v. Lawson,* 144 Ariz. 547, 553, 698 P.2d 1266, 1272 (1985) (quoting *State v. Torrez,* 112 Ariz. 525, 527, 544 P.2d 207, 209 (1975), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 767 (1976). The totality of the facts and circumstances determines whether probable cause is present and it may be established by the collective knowledge of all law enforcement personnel involved. *Lawson,* 144 Ariz. at 553, 698 P.2d at 1272.

The authority of police officers to arrest an individual based upon information received from other officers is restricted by *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). The court recognized that officers called upon to aid other law enforcement officers effecting an arrest warrant are entitled to assume that the instigating officers were acting upon a proper determination of probable cause.

*Id.* at 568, 91 S.Ct. at 1037. However, when the instigating officers lack a proper determination of probable cause, an otherwise illegal arrest is not insulated from challenge based upon the arresting officer's reliance that the warrant was obtained with the requisite probable cause. *Id.*

Arizona courts have since applied this rule, finding arrests illegal when the originating officers lacked probable cause, *see, e.g., State v. Richards,* 110 Ariz. 290, 518 P.2d 113 (1974), and upholding them when probable cause was present. *See, e.g., State v. Crivellone,* 138 Ariz. 437, 675 P.2d 697 (1983). In *State v. Brennan,* 22 Ariz. App. 471, 528 P.2d 857 (1974), we considered facts much like the one now before us. The defendant was convicted of possession of marijuana found during his arrest on a warrant for failure to appear for a traffic citation. We found the arrest warrant invalid because it was not issued upon a sworn complaint approved by a magistrate. *Id.* at 473, 528 P.2d at 859. As a result, we held the search of the defendant was invalid because it was the product of the warrantless arrest. *Id.*

Erroneous computer information cases regarding the existence of a valid warrant have fared no better. A majority of the decisions have held the arrest and the accompanying search invalid. *See United States v. Mackey,* 387 F.Supp. 1121 (D.Nev. 1975); *People v. Ramirez,* 34 Cal.3d 541, 194 Cal.Rptr. 454, 668 P.2d 761 (1983); *Pesci v. State,* 420 So.2d 380 (Fla.App.1982); *People v. Joseph,* 128 Ill.App.3d 668, 83 Ill.Dec. 883, 470 N.E.2d 1303 (1984); *People v. Lawson,* 119 Ill.App.3d 42, 74 Ill.Dec. 668, 456 N.E.2d 170 (1983); *People v. Decuir,* 84 Ill.App.3d 531, 39 Ill.Dec. 912, 405 N.E.2d 891 (1980); *People v. Jennings,* 54 N.Y.2d 518, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (1981); *People v. Watson,* 100 App. Div.2d 452, 474 N.Y.S.2d 978 (1984); *People v. Lent,* 92 App.Div.2d 941, 460 N.Y.S.2d 369 (1983); *State v. Trenidad,* 23 Wash.App. 418, 595 P.2d 957 (1979). In most of these cases, the courts have relied upon *Whiteley, supra,* in reaching this result. In those cases where the arrest has been upheld despite erroneous information

regarding the existence of a warrant or other basis for the stop, the courts have emphasized the short period of time that the police records had been outdated. *Annotation, Validity of Arrest Made in Reliance Upon Uncorrected or Outdated Warrant List or Similar Police Records,* 45 A.L.R. 4th 550, 554 (1986). *See Childress v. United States,* 381 A.2d 614 (D.C.App.1977) (traffic warrants had been satisfied four days prior to arrest); *Patterson v. United States,* 301 A.2d 67 (D.C.App.1973) (police notified of correct information fifteen hours prior to stop); *Commonwealth v. Riley,* 284 Pa.Super. 280, 425 A.2d 813 (1981) (arrest warrant satisfied four days earlier).

▆ Here, the police relied on an arrest warrant which was issued and quashed *five years* before the incident being investigated! The state recognizes that the arrest warrant was invalid, but maintains that the seizure should be upheld because the officers' reliance on the arrest warrant was objectively reasonable and in good faith. The good faith exception to the exclusionary rule is set forth in A.R.S. § 13–3925, and under the analysis contained in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### A. *"Good Faith" Under A.R.S. § 13–3925*

A.R.S. § 13–3925 provides in pertinent part:

A. If a party in a criminal proceeding seeks to exclude evidence from the trier of fact because of the conduct of a peace officer in obtaining the evidence, the proponent of the evidence may urge that the peace officer's conduct was taken in a reasonable, good faith belief that the conduct was proper and that the evidence discovered should not be kept from the trier of fact if otherwise admissible.

B. The trial court shall not suppress evidence which is otherwise admissible in a criminal proceeding if the court determines that the evidence was seized by a peace officer as a result of a good faith mistake or technical violation.

C. In this section:

1. "Good faith mistake" means a reasonable judgmental error concerning the existence of facts which if true would be sufficient to constitute probable cause.

2. "Technical violation" means a reasonable good faith reliance upon:

\* \* \* \* \* \*

(b) A warrant which is later invalidated due to a good faith mistake.

Arizona courts have had few occasions to apply this statute, and we have found no case in which the issue has been raised in a factual setting such as the one presented here.[1]

Colorado has a statute almost the same as ours. In *People v. Mitchell*, 678 P.2d 990 (Colo.1984), the Colorado Supreme Court had the same issues presented to it on similar facts as presented in this appeal. The defendant had been stopped for speeding. A dispatcher scanned a computer screen and informed the investigating officer that there was an outstanding arrest warrant for the defendant for the failure to pay a traffic fine. The dispatcher manually examined the warrant file to confirm this information. Acting on this information, the officer arrested the defendant and found cocaine in his pocket. Subsequently, it was determined that the warrant had been issued in error, since the defendant had actually paid the traffic fine prior to its issuance.

The defendant moved to suppress the cocaine contending that it was the product of an unconstitutional arrest based upon an invalid arrest warrant. The trial court granted the motion and the state sought reversal on the grounds of "good faith mistake" and "technical violation," terms defined in the Colorado statute precisely as they are in Arizona. With regard to the first ground, the Colorado court stated:

[The statute] defines a "good faith mistake" as a "reasonable judgmental error concerning the existence of facts which if true would be sufficient to constitute probable cause." This statutory definition restricts "good faith mistake" to mistakes based on reasonable judgmental errors of *fact* rather than mistakes of *law*. Indeed, it has been observed that it would be extremely difficult to determine what constitutes a reasonable mistake of law, requiring as it would an inquiry into "objective extrapolations of existing law" and "inferences from existing law" that an officer should have drawn. 1 W. La-Fave, [Search and Seizure] at § 1.2 at 15 (Supp.1984). In the case of an arrest warrant, the statutory definition of "good faith mistake" is apparently intended to include reasonable judgmental errors of fact made by an officer in applying for or in executing a warrant, or similar factual errors made by a court in issuing a warrant. Viewed in this light, the statutory definition of "good faith mistake" serves to make explicit what is already implicit in federal exclusionary rule doctrine.

*Id.* at 995 (emphasis in original; case citation omitted).

The court concluded that the arrest of the defendant did not involve a "good faith mistake." *Id.* at 995–96. The arresting officer had been correctly informed by his dispatcher that there was a warrant outstanding. The warrant, however, was invalid and there was no evidence in the record to show that it had been issued due to "some reasonable judgmental error concerning the existence of facts which if true would have constituted possible cause." *Id.* at 995. As a result, the court held the "good faith mistake" portion of the statute simply could not be used to validate an arrest made on an invalid warrant. *Id.*

---

1. In *State v. Nahee*, 155 Ariz. 114, 745 P.2d 172 (App.1987), we relied in part on A.R.S. § 13–3925(A) in reversing a trial court order suppressing physical evidence that had been seized incident to an arrest that violated a Yavapai Apache tribal statute. In *Nahee*, we did not analyze the statutory provisions pertaining to

"good faith mistake" and "technical violation," advanced by the state in this case. However, we do recognize that *Nahee* involved the suppression of the fruits of an allegedly illegal arrest, and thus reject defendant's contention that A.R.S. § 13–3925 does not apply to arrests but rather only to seizures of evidence.

The court also found that the arrest could not be supported by reference to the term "technical violation." *Id.* at 996. As in Arizona, the term "technical violation" in Colorado means "a reasonable good faith reliance upon ... a warrant which is later invalidated due to a good faith mistake...." Colo.Rev.Stat. 16–3–308(2)(b). The court found that the language did not apply because the warrant had not been voided due to a mistake at all, saying:

> On the contrary, the warrant was void not because the facts supporting it fell somewhat below the constitutional threshold of probable cause, but, so far as the record shows, because there were no facts at all to support its issuance. Whatever the outer limit of the "technical violation" exception might be, we are satisfied that it was not intended to encompass an arrest warrant that is totally devoid of any factual support and comes into being only as the result of some unexplained mistake on the part of the issuing court. The defect in such a warrant is a fundamental one, far beyond the purview of a "technical violation."

*Mitchell,* 678 P.2d at 996. *Accord People v. Fields,* 785 P.2d 611 (Colo.1990) (applying *Mitchell,* court suppressed fruits of an arrest based on erroneous computer information that defendant was subject of parole violation warrant).

The same analysis guided the Florida Court of Appeals in invalidating a search in *Pesci v. State,* 420 So.2d 380 (Fla.App. 1982). Confronted with an arrest of defendant upon a warrant that had been quashed two months before, the court rejected arguments that reliance by police upon the existence of a warrant was justified as either a "good faith mistake" or "technical violation:"

> The police officer in this case was not exercising any judgment as to whether the facts known to him constituted probable cause, but was instead relying solely on information received by radio that there was an outstanding alias capias. There is no contention or showing here that the officer, at the time he stopped defendant for a minor traffic infraction, had any other justification for intruding upon' defendant's protected Fourth Amendment interest, therefore the "good-faith mistake" exception cannot apply. *Neither would the "technical violation" exception have any application here because the warrant (alias capias) was void or nonexistent at the time defendant was arrested. The exception would apply only if the warrant had been presumptively valid at the time of the arrest but was invalidated by a subsequent judicial determination.*

*Id.* at 382 (emphasis supplied).[2]

We agree with the analysis of *Mitchell* and *Pesci.* The conduct of the investigating officers in this case is not shielded by A.R.S. § 13–3925, because that conduct does not meet the definition of "good faith mistake" or "technical violation" set out in that statute. The record is completely silent concerning any evidence which would indicate that the officers had information which would provide a basis for a good faith belief in the warrant's validity. Indeed, the police records custodian called to testify stated that the Flagstaff Police Department did not know how the warrant came to be re-entered into the system five years after it had been quashed.

We emphasize that the burden is upon the state to prove that a 'good faith' exception to the exclusionary rule applies. The general rule is that the prosecutor has the burden of proving, by a preponderance of the evidence, the lawfulness of the acquisition of evidence used at trial. Rule 16.2, Arizona Rules of Criminal Procedure. The burden to prove good faith is also

---

**2.** The Florida court construed the terms "good-faith mistake" and "technical violation" as they were defined by a federal appellate decision, *United States v. Williams,* 622 F.2d 830 (5th Cir.1980), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). The *Williams* opinion, in turn, relies upon the definition of the terms provided by Ball, *Good Faith and the Fourth Amendment: The "Reasonable" Exception to the Exclusionary Rule,* 69 J.Crim L. & Criminology 635 (1978). The definitions of the terms in these sources are virtually identical to those found in A.R.S. § 13–3925(C).

established by the specific command of A.R.S. § 13–3925(A) that "the proponent of the evidence may urge that the peace officer's conduct was taken in a reasonable, good faith belief that the conduct was proper."

### B. *"Good Faith" Under United States v. Leon*

■ In addition to A.R.S. § 13–3925, the state relies upon *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) for the proposition that the objective good faith of the arresting officers should preclude the exclusion of evidence.

In *Leon,* the Supreme Court held that the exclusionary rule does not apply where the government establishes that a police officer exhibited "objectively reasonable" reliance on a *magistrate's* determination of probable cause and on the technical sufficiency of the search warrant issued. *Id.* at 922, 104 S.Ct. at 3420. As a result, the Court held that evidence seized pursuant to a warrant need not be suppressed even though the magistrate's finding of probable cause was later found to be erroneous. *Id.* The Court reasoned that deterrence of police misconduct would not be furthered in a situation where officers have sought the independent judicial scrutiny of the search, via a warrant application, which is favored under the fourth amendment. *Id.* at 920–21, 104 S.Ct. at 3419.

The facts in this case certainly stretch mightily the state's claim that the reasoning of *Leon* should apply to the issue here. Only one case seems to support the state's position. In *United States v. Towne,* 870 F.2d 880 (2d Cir.), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989), the Court considered the arrest of the defendant under a New Hampshire warrant which had been kept in an active police computer file in violation of a plea agreement made three years earlier. After receiving information about the existence of a warrant, the arresting officer checked with the New Hampshire County and received a certified copy of the warrant before arresting the defendant. Citing *Leon,* and with minimal further analysis, the Court found the reliance of the arresting officer on the warrant to have been objectively reasonable. *Id.* at 885. The arrest and resulting search were primarily upheld based on the view that exclusion of the evidence would not further the purpose of the rule, that is, punishment of police misconduct. *Id.*

*People v. Joseph,* 128 Ill.App.3d 668, 83 Ill.Dec. 883, 470 N.E.2d 1303 (1984), reached a different result. The defendant had been arrested, without independent probable cause, on the basis of a warrant that had been quashed eleven days earlier. The court, focusing on what it perceived as a growing problem with police reliance on electronically recorded and disseminated criminal files, suppressed evidence discovered in a search incident to defendant's arrest. *Id.* 128 Ill.App.3d at 673, 83 Ill.Dec. at 886, 470 N.E.2d at 1306. Rejecting the application of *Leon* to the conduct of the police, the court stated:

> In *Leon,* the Supreme Court observed that the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. The situation in the instant case reflects a matter within the responsibility and control of police authorities who failed to update their records to accurately reflect defendant's current status. In this age of computerization, we do not believe it would be appropriate to sanction the arrest here, thereby allowing law enforcement authorities to rely on an error of their own making. Moreover, it is our opinion that the good-faith reliance of the arresting officer, in acting upon information provided to him through police channels, cannot overcome the intrusion upon defendant's fourth amendment rights.

*Id.* 128 Ill.App.3d at 672, 83 Ill.Dec. at 886, 470 N.E.2d at 1306 (citations omitted). In addition to *People v. Mitchell, supra,* other courts have rejected claims of good faith justification in this precise factual context. *See, e.g., People v. Ramirez,* 34 Cal.3d 541, 194 Cal.Rptr. 454, 668 P.2d 761 (1983); *People v. Jennings,* 54 N.Y.2d 518, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (1981).

We find the analysis of *People v. Joseph, supra,* persuasive concerning the difference between *Leon* and this case. Unlike *Leon,* this case presents a situation in which there is no dispute that the warrant in question was *invalid*—in effect, non-existent at the time it was executed by the investigating officers. Unlike *Leon,* this case suggests no erroneous judicial conduct on which police officers reasonably relied. The warrant in question was quashed by the issuing court and there is no contention in this case that the warrant was erroneously re-entered into the police computer system at the behest of any judicial officer. Any mistake was that of the police. Under *Whiteley,* the fact that Officer Moreno acted on information from another agency is immaterial.

It must also be mentioned that *Leon* acknowledged the continued vitality of *Whiteley v. Warden, supra,* when the *Leon* court said:

> References to "officer" throughout this opinion should not be read too narrowly. *It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination.* Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of circumstances under which the warrant was obtained to conduct the search. *See Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971).

*Leon,* 468 U.S. at 923, n. 24, 104 S.Ct. at 3420, n. 24 (emphasis added).

## CONCLUSION

Detective Moreno's presence at the execution of the warrant for appellant's arrest permitted him to view the objects which he later described in his search warrant affidavit. The actual seizure of this evidence was accomplished based on a search warrant issued by a superior court judge who was presented with this affidavit. The detective conceded that without his observations at the time of the arrest, there would have been insufficient facts to establish probable cause.

The illegal conduct in this case, the arrest of appellant pursuant to an invalid warrant, cannot be exploited by officers who relied on information obtained in that arrest to procure a search warrant. We said in *State v. Hicks,* 146 Ariz. 533, 707 P.2d 331 (App.1985), *aff'd on other grounds sub. nom. Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987):

> The state argues that because the officer subsequently obtained a search warrant that his actions ought to be validated under the "good-faith" exception to the exclusionary rule. The state cites A.R.S. § 13–3925 and *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Neither is applicable. The statute simply does not speak to this situation. And, while *Leon* does hold that officers may reasonably rely on a magistrate's assessment of probable cause in issuing a warrant and that exclusion need not be ordered if the magistrate is wrong in that assessment, it does not hold that a subsequent warrant validates an earlier illegal search. Police officers cannot launder their prior unconstitutional behavior by presenting the fruits of it to a magistrate.

*Hicks,* 146 Ariz. at 535, 707 P.2d at 333. *Accord State v. Britain,* 156 Ariz. 384, 752 P.2d 37 (App.1988). The same analysis applies here.

The state's argument concerning the "plain view" doctrine does not apply here since this is not a warrantless seizure case.

The appellant's conviction was premised on possession of items which were seized as a result of his illegal arrest. The admission of that evidence is not harmless error. We have reviewed the entire record for fundamental error and have found none.

We reverse the conviction and remand the matter to the trial court for the entry of an order granting appellant's motion to

suppress the evidence seized and for a new trial.

GRANT, C.J., and SHELLEY, J., concur.