No. _____

(Court of Appeals No. 02-14-00313-CR
_____

IN THE COURT
OF CRIMINAL APPEALS OF TEXAS
AT AUSTIN, TEXAS
_____

ROBERT O'BRYAN,

*Petitioner*,

v.

THE STATE OF TEXAS,

*Respondent*,

_____

**PETITION FOR DISCRETIONARY REVIEW**
_____

FROM THE SECOND DISTRICT
COURT OF APPEALS

_____

ARISING IN COUNTY CRIMINAL COURT NUMBER ONE
DENTON COUNTY, TEXAS
(Trial Court No. CR-2013-08057-A)

_____

FILED IN
COURT OF CRIMINAL APPEALS

July 7, 2015

ABEL ACOSTA, CLERK

RICHARD GLADDEN
State Bar No. 07991330
Law Office of Richard Gladden
1200 West University, Suite 100
Denton, Texas 76201
940/323-9300 (voice)
940/539-0093 (fax)
richscot1@hotmail.com (email)

July 6, 2015

*ATTORNEY FOR PETITIONER*

# IDENTITY OF PARTIES


**COURT OF APPEALS:**        SECOND JUDICIAL DISTRICT:

                        Justice **Lee Ann Daughinot**;
                        Justice **Lee Gabrial**; and
                        Justice **Bonnie Sudderth**


**TRIAL COURT:**              THE COUNTY CRIMINAL COURT
                          NUMBER ONE,
                          DENTON COUNTY, TEXAS:

                          Judge **Jim E. Crouch**


**PETITIONER:**

**Robert O'Bryan**
C/O  Richard Gladden
1200 West University Street, Suite 100
Denton, Texas 76201
Telephone: 940/323-9300
Facsimile: 940/539-0093


**PETITIONER'S ATTORNEY:**

**Richard Gladden**
State Bar No. 07991330
1200 West University Street, Suite 100
Denton, Texas 76201
Telephone: 940/323-9300
Facsimile: 940/539-0093
Email: richscot1@hotmail.com

**APPELLATE AND TRIAL ATTORNEYS FOR THE STATE OF TEXAS:**

**Paul Johnson**
Denton County Criminal District Attorney

**Catherine Luft**, Assistant Denton Co.
Criminal District Attorney (appeal only)

**Lara Tomlin**, Assistant Denton Co.
Criminal District Attorney (appeal only)

**Julie Harbin**, Assistant Denton Co.
Criminal District Attorney (trial only)

Denton Co. Criminal District Attorney's Office
Denton County Courthouse, Third Floor
1450 East McKinney Street
Denton, Texas 76209
Telephone: 940/349-2600
Facsimile: 940/349-2751

**Lisa C. McMinn**
*State Prosecuting Attorney*
P.O. Box 13046
Austin TX 78711
Telephone: 512/463-1660
Facsimile: 512/463-5724

# TABLE OF CONTENTS

**Page**

Identity of the Parties…………………………………………….. i

Table of Contents…………………………………………… iii

Index of Authorities..…………………………………….. v

Statement Regarding Oral Argument……………………………….. 1

Statement of the Case:

    A) Prior Proceedings………………………………………….. 2

    B) Statement of Facts…………………………………. 9

Question Presented for Review……………………………………... 9

Grounds (or Reasons) for Granting Review…………………………….. 9

Argument (On "Grounds [or Reasons] for Granting Review):

1) **The Second Court of Appeals' decision below directly conflicts with the U.S. Supreme Court's decision in *United States v. Hensley*, 469 U.S. 221, 232 (1985)(Tex.R.App.P. 66.3(c)).**

    ……….. 10

2) **The issue decided by the Second Court of Appeals in this case involves an important, recurring question of federal constitutional law that should be, but has not been, decided by the Texas Court of Criminal Appeals (Tex.R.App.P. 66.3(b)).**

    …………. 14

3) **The Second Court of Appeals' decision below directly conflicts with a near consensus among decisions rendered by other intermediate State appellate courts and State courts of last resort, as well as with at least one U.S. District Court; and the Court of Appeals' peculiar departure from that consensus on the issue at hand has been characterized by an esteemed legal treatise as "bizarre" and "clearly wrong." (Tex.R.App.P. 66.3(f)).**

……………………………... 15

4) **The Panel of the Second Court of Appeals which rendered the decision in this case was divided, resulting in the issuance of a dissenting opinion (Tex.R.App.P. 66.3(e)).**

……………………. 17

Conclusion and Prayer for Relief……………………………………… 18

Certificate of Compliance……………………………………………... 18

Certificate of Service…………………………………………………... 19

**APPENDIX:**

Majority Opinion and Judgment, *O'Bryan v. State*, No. 02-14-00313-CR, 2015 WL 3422093 (Tex.App. Fort Worth, May 28, 2015)(not yet published)("**Pet.App.-A**")

…………………………….. **TAB ONE**

Dissenting Opinion, *O'Bryan v. State*, No. 02-14-00313-CR, 2015 WL 3422093 (Tex.App. Fort Worth, May 28, 2015)(per Dauphinot, J.)(not yet published)("**Pet.App.-B**")

……………………. **TAB TWO**

# INDEX OF AUTHORITIES

**Cases:** **Page**

*Albo v. State*, 477 So. 2d 1071 (Fla. Dist.Ct.App. 1985)…………... 15

*Carter v. State*, 305 A.2d 856 (Md. Ct. Spec. App. 1973)…………. 16

*Maryland v. Garrison*, 480 U.S. 79 (1987)…………………………… 13

*People v. McElhaney*, 552 N.Y.S.2d 825 (N.Y.Sup.Ct 1990)……... 16

*People v. Ramirez*, 668 P.2d 761 (Ca. 1983)………………………. 15

*State v. Mance*, 918 P.2d 527 (Wash. Ct. App. 1996)……………... 16

*State v. Moore*, 614 A.2d 1360 (N.J. Super. Ct. App. App. 1992)… 15

*Terry v. Ohio*, 392 U.S. 1 (1968)…………………………………... 13

*United States v. Anderson*, No. 4:07-CR-0023, 2007 WL 4732033
(N.D. Ohio June 21, 2007)(unpublished)

…………………………... 16

*United States v. Hensley*, 469 U.S. 221 (1985)…………………….. 9-11

**Statutes, Codes, Rules, and Constitutional Provisions:**

Article 38.23, Texas Code of Criminal Procedure…………............... 2

Section 483.041, Texas Health & Safety Code…………………….. 2

Rule 9.4, Texas Rules of Appellate………………………………... 18

Fourth Amendment to the United States Constitution……………... *passim*

**Other Sources:**

LaFave & Baum, *Search and Seizure: A Treatise on the Fourth
Amendment* (5th ed. 2012).

……………………………………… 13, 17

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW Petitioner Robert O'Bryan, and, pursuant to Rules 66 and 68, *et seq.*, of the Texas Rules of Appellate Procedure, files this Petition for Discretionary Review.

## STATEMENT REGARDING ORAL ARGUMENT

The Second Court of Appeals' decision in this case involves an important question of Federal Constitutional Law that has not been, but should be, decided by the Court of Criminal Appeals.[1] In light of the importance of the constitutional question presented, the recurrent nature of the question, and the relative complexity of the legal issue involved, Petitioner respectfully submits that oral argument would significantly aid the Court in reaching its decision on the merits and that oral argument should therefore be granted.

---

[1] *O'Bryan v. State*, No. 02-14-00313-CR (Tex.App. Fort Worth, May 28, 2015), slip opinion at 8 ("While four States have extended the collective knowledge doctrine to apply prohibitively, Texas is not one of them.")(not yet published), attached hereto in **Petitioner's Appendix** (hereinafter **"Pet. App.-A"**); 2015 WL 3422093, *3.

## STATEMENT OF THE CASE

**A)** *Prior Proceedings*.

On October 31, 2013, Petitioner (hereafter "Defendant") was charged by Complaint and Information with two counts of violating Section 483.041 of the Texas Health & Safety Code ("Possession of a Dangerous Drug"), a Class A misdemeanor.[2] On March 28, 2014, Defendant filed a motion to suppress all evidence and testimony obtained by the State as the result of the stop and detention of Defendant.[3] In his motion Defendant alleged the initial stop of his motor vehicle and his detention thereafter was without reasonable suspicion and therefore violated the Fourth Amendment to the United States Constitution, as made applicable to the States by virtue of the Fourteenth Amendment. On this basis Defendant's motion further contended that he was entitled, as a matter of Texas statutory law under Article 38.23 of the Texas Code of Criminal Procedure, to an order that rendered inadmissible all testimony and evidence obtained by police as the result of the stop and detention.[4]

---

[2] Clerk's Record, 5-6. Hereinafter, references to "CR" are to the "Clerk's Record," which will be followed by a specific page number within the Clerk's Record; the Reporter's Record will be referred to as "RR," followed by a volume designation, *e.g.* "II," and page number, *e.g.*, "3."

[3] CR, 33.

[4] CR, 33, 38.

On May 16, 2014, an evidentiary hearing was held on Defendant's motion to suppress.[5] On May 29, 2014, the Trial Court entered a written order denying Defendant's motion.[6] On July 11, 2014, the State and Defendant entered into a plea agreement that disposed of this case without further trial-court proceedings. Under this plea agreement the State, in exchange for Defendant's entry of a plea of guilty, recommended that the Trial Court enter an order placing Defendant under community supervision for a period of 12 months, without a finding of Defendant's guilt, and that the Trial Court's order impose of a fine of $400.[7] Additionally, the plea agreement preserved Defendant's right to appeal from the Trial Court's adverse ruling on his pretrial motion to suppress.[8] On July 11, 2014, the Trial Court accepted this plea agreement and entered an order placing Defendant on community supervision without an adjudication of guilt.[9]

On August 7, 2014, Defendant timely filed notice of appeal from the Trial Court's denial of his pre-trial motion to suppress.[10] On May 28, 2015, a divided panel of the Second Court of Appeals rendered a published decision

---

[5] RR II, 1.
[6] CR, 63.
[7] CR, 74.
[8] CR, 76.
[9] CR, 70.
[10] CR, 81.

which affirmed the Trial Court's judgment.[11] This petition for discretionary review followed.

**B)** *Statement of Facts*.

The material facts in this case are undisputed.[12] On August 18, 2012, Defendant's father, Charles O'Bryan, reported to the Denton Police Department that his motor vehicle, a 1994 Pontiac Grand Am, Texas License Plate "DD6-M895," had been stolen from near his residence located at 1022 West Congress in the City of Denton, Texas.[13] Officer Danny Steadham of the City of Denton Police Department ("Steadham") was then dispatched in response to this report and conferred with Defendant's father at his home.[14] As part of his investigation, Steadham determined that the vehicle in question had not been reported as "towed" by any towing company.[15] Upon concluding his investigation, Steadham then requested at the end of his report that a "Teleserve" entry be made reporting the vehicle as "stolen."[16] Apparently in accordance with Denton Police Department policy, a

---

[11] Pet.App.-A (Majority Opinion); Pet.App.-B (Dauphinot, J., dissenting)

[12] Pet.App.-A (Majority Opinion), at 2; 2015 WL 3422093, *1 ("The facts of this case are undisputed.").

[13] CR, 43. Pages 40 through 48 of the Clerk's Record (CR, 40-48), which originally comprised a single exhibit attached to Defendant's motion to suppress, were admitted into evidence at the hearing on Defendant's motion to suppress without objection from the State. *See*, RR II, 31-32; RR III. For clarity in citation, Defendant herein refers to these documents as they appear individually paginated in the Clerk's Record.

[14] CR, 42.

[15] CR, 43.

[16] CR 43, 46.

4

dispatcher at the Denton Police Department who was "certified" to perform this task then entered that information into the TCIC/NCIC computer data systems.[17]

On September 12, 2012, Officer Landolfo of the Denton Police Department ("Landolfo") was dispatched to Motorsports Towing Company in Denton, Texas.[18] Upon arrival Landolfo was informed by Officer Cottrell ("Cottrell"), a "Parking Officer" with the Denton Police Department, that the aforementioned vehicle had been ticketed and marked for impoundment on September 5, 2012, and had been subsequently towed to Motorsports Towing Company on September 12, 2012.[19] After the vehicle had been towed, Cottrell was notified that the vehicle had been reported stolen, and Cottrell confirmed this fact in reliance on an electronic data base maintained by law enforcement authorities.[20] Landolfo then contacted Defendant's father, the owner of the vehicle, and advised him to contact Motorsports Towing Company and make arrangements for the return of his vehicle.[21] A short time later Defendant's father made such arrangements, and retrieved the vehicle from Motorsports Towing Company.

---

[17] RR II, 22-23.
[18] CR, 45.
[19] CR, 45.
[20] CR, 45.
[21] CR, 45.

More than five (5) months later, at approximately 3:15 p.m. on February 23, 2013, Officer Dwight Thornton of the City of Northlake Police Department ("Thornton") observed Defendant driving his father's vehicle on Interstate 35W traveling northbound.[22] Although he observed nothing unusual about Defendant's driving and did not observe Defendant commit any traffic violation or criminal offense, Thornton "ran a routine records check" on the license plate of the vehicle using his in-car computer.[23] Thornton then received a "return" on that inquiry which notified him that the vehicle being operated by Defendant (Defendant's father's vehicle) was a "stolen" vehicle.[24] The Defendant was thereupon stopped by Thornton without incident, and as the result of this stop and detention, Defendant was arrested and the contraband made the basis of the present criminal case against Defendant was obtained by Thornton during a search of the vehicle.[25]

Later in the day of Defendant's arrest on February 23, 2013, Defendant's sister, Lori Reeves ("Reeves"), contacted the Denton Police Department and spoke with Sergeant Frank Padgett ("Padgett").[26] On being informed by Reeves that the vehicle in question had been recovered by Denton Police more than five (5) months earlier, Padgett after independent

---

[22] CR, 47.
[23] CR, 47; RR II, 8, 16-17.
[24] CR, 47; RR II, 21-22.
[25] CR, 47; RR II, 15.
[26] CR, 46

inquiry promptly discovered that "[t]he vehicle had not been removed from TCIC/NCIC when it was recovered in September 2012."[27] As the result of this discovery, Defendant was subsequently released from the Denton County Jail, where he had been transported after his arrest, without being charged with felony theft of the vehicle. The Defendant was, however, required to post bail to secure his appearance and answer to the charge made the basis of the present case, *i.e.*, "Possession of a Dangerous Drug."[28]

Testimony at the hearing on Defendant's motion to suppress revealed that while dispatchers with the Denton Police Department are responsible for removing stolen vehicle reports from the TCIC/NCIC systems when they are recovered, Denton Police Department officers and investigators are responsible for notifying Denton dispatchers when that should be done.[29] Landolfo's supplemental report (CR, 45), which recorded recovery of the vehicle, was not in the "paper" file kept by the Denton Police Department either when the "stolen vehicle" was "confirmed" at the time of Defendant's arrest on February 22, 2014, or the following day when Padgett conducted his own independent investigation into whether the vehicle had been

---

[27] CR, 46
[28] CR, 5-6, 13.
[29] RR II, 22-24, 26.

recovered five months earlier.[30] Padgett was apparently able to locate Landolfo's supplemental report (disclosing that the vehicle had been recovered on September 12, 2014) using the "RMS," which is a system into which Denton Police officers and investigators enter their reports.[31] Denton Police Department dispatchers, however, do not have access to the RMS system.[32]

Ultimately, testimony at the hearing on Defendant's motion to suppress fell short of establishing, conclusively, whether the error that resulted in Defendant's detention was the fault of Landolfo, or was instead the fault of a dispatcher at the Denton Police Department who was on duty at the time the vehicle was recovered on September 12, 2013.[33] In either case, it is undisputed that the error which resulted in Defendant's detention five months after the vehicle had been recovered is assignable to the Denton Police Department.[34]

---

[30] RR II, 23-24, 29.

[31] RR II, 29.

[32] RR II, 28.

[33] RR II, 230 (assigning error to Landolfo), *but see* RR II, 32-33 ("it could have been Dispatch" that committed the error).

[34] RR II, 33-34.

# QUESTION PRESENTED FOR REVIEW

*Whether the "Collective Knowledge" Doctrine under the Fourth Amendment, Approved by the U.S. Supreme Court in <u>United States v. Hensley</u>, 469 U.S. 221, 232 (1985), Constitutionally Permits the Seizure of a Motorist When the Law Enforcement Agency Confirming the Existence of an Electronic "Stolen Vehicle" Report, at the Time of the Seizure, is in Possession of Information that Conclusively Dispels "Reasonable Suspicion" to Support the Stop.*

## GROUNDS (OR REASONS) FOR GRANTING REVIEW

1) The Second Court of Appeals' decision below directly conflicts with the U.S. Supreme Court's decision in *United States v. Hensley*, 469 U.S. 221, 232 (1985).[35]

2) The issue decided by the Second Court of Appeals in this case involves an important, recurring question of federal constitutional law that should be, but has not been, decided by the Texas Court of Criminal Appeals.[36]

---

[35] Tex.R.App.P. 66.3(c)("[W]hether a court of appeals has decided an important question of… federal law in a way that conflicts with the applicable decisions of…the Supreme Court of the United States.").

[36] Tex.R.App.P. 66.3(b)([W]hether a court of appeals has decided an important question of …federal law that has not been, but should be, settled by the Court of Criminal Appeals.")

3) The Second Court of Appeals' decision below directly conflicts with a near consensus among decisions rendered by other intermediate State appellate courts and State courts of last resort, as well as with at least one U.S. District Court; and the Court of Appeals' peculiar departure from that consensus on the issue at hand has been characterized by an esteemed legal treatise as "bizarre" and "clearly wrong."[37]

4) The Panel of the Second Court of Appeals which rendered the decision in this case was divided, resulting in the issuance of a dissenting opinion.[38]

## ARGUMENT

1) ***The Second Court of Appeals' decision below directly conflicts with the U.S. Supreme Court's Decision in <u>United States v. Hensley</u>, 469 U.S. 221, 232 (1985).***

Under what has become known as the "collective knowledge" doctrine the U.S. Supreme Court has held that when a police officer in the field, without personal knowledge of facts that would justify a detention, is alerted by radio to the existence of a "wanted flyer" issued by a police department, certain circumstances may justify the detention of a person in

---

[37] Tex.R.App.P. 66.3(f)("[W]hether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.")

[38] Tex.R.App.P. 66.3(e)("[W]hether the justices of a court of appeals have disagreed on a material question of law necessary to the court's decision.")

order to "confirm or dispel" a reasonable belief that the person is, or has been, engaged in criminal activity. *United States v. Hensley*, 469 U.S. 221 (1985). In *Hensley* the Court further ruled however, that the constitutionality of such a detention *does not* turn solely on the objective reasonableness of the patrol officer's reliance on the existence of the "wanted flyer." Rather, the legality of such a detention depends, in this context, on whether "the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop." *Id.*, 469 U.S. at 233 (italics in original). In other words, "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." *Id.*, 469 U.S. at 232-233.

In the present case the Second Court of Appeals has ruled that a stop in objective reliance upon an electronic "stolen vehicle" report *does not* violate the Fourth Amendment *even when* the law enforcement agency confirming the existence of the electronic "stolen vehicle" report, at the time of the stop, *is without "reasonable suspicion"* and is in possession of information that conclusively dispels "reasonable suspicion" to support the stop. The Second Court of Appeals' decision warrants review by the Court of Criminal Appeals, as "it has decided an important question of… federal

law in a way that conflicts with the applicable decisions of…the Supreme Court of the United States." Tex.R.App.P. 66.3(c).

The "importance" of the Second Court of Appeals' decision in the present case, moreover, cannot be understated, as it seriously endangers the liberty of virtually all motorists within the State of Texas. As recently reported in the Denton Record-Chronicle newspaper, law enforcement authorities Statewide, including those located in Denton County, Texas, have deployed "Automated License Plate Reader Systems" which "allow law enforcement officers to capture images of license plates and instantaneously compare them with millions of 'Hot List' records to identify vehicles of interest."[39] While a spokesperson for the City of Denton Police Department (the agency responsible for the error in the present case) assured readers that "if you're not doing anything wrong, you don't have to worry about it,"[40] the facts of the present case demonstrate precisely the contrary.

In the present case Defendant does not dispute that reasonable suspicion existed to believe the vehicle was in fact "stolen," *at the time that Officer Steadham entered the "stolen vehicle" report into the TCIC/NCIC computer systems.* What Defendant does contend is that, under the

---

[39] McPhate, *New Tech Keeps Vigilant Eye* (Denton Record-Chronicle, Oct. 11, 2014), available online at: http://www.dentonrc.com/local-news/local-news-headlines/20141011-new-tech-keeps-vigilant-eye.ece (last viewed 7/3/2015).
[40] Ibid.

12

"collective knowledge" doctrine, reasonable suspicion no longer existed at the time Defendant was stopped in the vehicle, and that the stop and detention of Defendant therefore violated the Fourth Amendment.

As numerous courts have recognized in a variety of circumstances, under the "collective knowledge" doctrine the fact that a "wanted flyer" (or "BOLO" bulletin for a stolen vehicle) was supported by reasonable suspicion at the time it was issued does not end the Fourth Amendment inquiry.[41] Like the validity of an arrest or search without a warrant, the validity of a warrantless police detention under the Fourth Amendment must be judged in light of the information available to (or known by) law enforcement authorities at the time of the detention. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)(Fourth amendment requires that "the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure [justify the detention]?"); *Cf., Maryland v. Garrison*, 480 U.S. 79, 85 (1987)(constitutional "reasonableness" of warrant's execution must be judged in light information available to officers "at the time they acted."). In other words, the information to be considered when determining whether a Fourth Amendment violation has occurred in the present case *is not limited*

---

[41] *See*, 2 LaFave & Baum, *Search and Seizure: A Treatise on the Fourth Amendment*, §3.5(d), pp. 358-364 (5th ed. 2012)(constitutional "problems arise when [police] records do not accurately reflect the current situation"); *and see also*, 4 LaFave & Baum, *supra*, §9.5(j), p. 824 (to avoid Fourth Amendment violation "it will not inevitably suffice that a reasonable suspicion existed at the source at the time the bulletin was issued").

to information known by law enforcement *at the time the motor vehicle was reported stolen* on August 18, 2012; and the judicial inquiry is not confined to the information *personally known* by the police officer who actually detained Defendant five months later on February 23, 2013. Thus, when assessing whether the detention of Defendant was supported by reasonable suspicion the Court of Appeals was obliged by U. S. Supreme Court precedent to consider the "collective knowledge" of all law enforcement authorities at the time the stop occurred, including police knowledge that the vehicle had been recovered and returned to its owner prior to the stop. Its failure to do so eviscerates the Fourth Amendment.

2) ***The issue decided by the Second Court of Appeals in this case involves an important, recurring question of federal constitutional law that should be, but has not been, decided by the Texas Court of Criminal Appeals.***

As the Second Court of Appeals itself observed in its decision below, "[w]hile four States have extended the collective knowledge doctrine to apply prohibitively, Texas is not one of them."[42] This fact also warrants review of the Second Court of Appeals' decision in this case. *See*, Tex.R.App.P. 66.3(b)("[W]hether a court of appeals has decided an

---

[42] Pet.App.-A, at 8; 2015 WL 342209, *3.

14

important question of …federal law that has not been, but should be, settled by the Court of Criminal Appeals.")

3) ***The Second Court of Appeals' decision below directly conflicts with a near consensus among decisions rendered by other intermediate State appellate courts and State courts of last resort, as well as with at least one U.S. District Court; and the Court of Appeals' peculiar departure from that consensus on the issue at hand has been characterized by an esteemed legal treatise as "bizarre" and "clearly wrong."***

As observed by the Supreme Court of California in a related context (invalidating arrest due to unconstitutional reliance on recalled warrant), the principle invoked by Defendant may be succinctly stated as follows:

> "The 'fellow officer' or 'collective knowledge' rule cannot function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information."[43]

In several State Court decisions, and at least one U.S. District Court decision, the foregoing rule has been specifically applied to constitutionally

---

[43] *People v. Ramirez*, 668 P.2d 761, 765 (Ca. 1983). As previously stated, in addition to the decision in *Ramirez*, this application of the "collective knowledge" doctrine has been widely followed by numerous courts in a variety of circumstances. *See e.g.*, *State v. Moore*, 614 A.2d 1360 (N.J. Super. Ct. App. App. 1992)(invalidating arrest in reliance on vacated bench warrant); *Albo v. State*, 477 So. 2d 1071 (Fla. Dist.Ct.App. 1985)(invalidating arrest in reliance on stale computer data erroneously stating defendant's driver's license continued to be suspended); and *see also id*., 477 So.2d at 1073 n. 2 (listing "unanimous authority on this point").

invalidate detentions relying on stale information erroneously reporting that a motor vehicle continued to be "stolen" when the vehicle had, in fact, been previously recovered and returned to its rightful owner, as in the present case. *See, Carter v. State*, 305 A.2d 856 (Md. Ct. Spec. App. 1973); *People v. McElhaney*, 552 N.Y.S.2d 825 (N.Y.Sup.Ct 1990); *State v. Mance*, 918 P.2d 527 (Wash. Ct. App. 1996); and, *United States v. Anderson*, No. 4:07-CR-0023, 2007 WL 4732033 (N.D. Ohio June 21, 2007)(unpublished). No Texas authorities appear to have addressed the constitutional question.

In the present case it is undisputed that, at the time Defendant's vehicle was stopped, information in possession of law enforcement authorities conclusively established that five months earlier the vehicle in question had been returned to its rightful owner and was therefore no longer "stolen." The Court of Appeals' in the present case nonetheless concluded that the police error after recovery of the vehicle, and the subsequent five-month delay in correcting police records to show that the "stolen" vehicle had been recovered, is constitutionally irrelevant because: 1) the police simply forgot to cancel their teletype in the N.C.I.C. computer; and 2) these errors were unknown to the officer who relied upon the erroneous record when initiating the stop of Defendant. This very mode of legal analysis has been properly characterized as not only "clearly wrong," but "bizarre" by

16

one esteemed legal treatise. *See*, 2 LaFave & Baum, *Search and Seizure: A Treatise on the Fourth Amendment*, §3.5(d), pp. 363-364 (5th ed. 2012). In this regard, the Second Court of Appeals truly "has so far departed from the accepted and usual course of judicial proceedings, [and has] so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision," Tex.R.App.P. 66.3(f).

4) ***The Panel of the Second Court of Appeals which rendered the decision in this case was divided, resulting in the issuance of a dissenting opinion.***

In her dissenting opinion Justice Dauphinot has candidly expressed her inability to "understand the majority's hypothesis that in Texas, imputed knowledge may only expand the authority of the prosecution but may not protect the constitutional rights of the accused."[44] The Petitioner, and no doubt many others, shares Justice Dauphinot's view. Yet the majority's decision is not merely a "hypothesis." Rather, it constitutes precedent for a disturbing new legal maxim which holds that in Texas law it is now "Heads: suspicionless police detention wins; Tails: individual privacy loses." The issue presented by the instant petition involves "a material question of law necessary to" the majority's decision below, and it is one on which the

---

[44] Pet.App.-B, at 1 (Dauphinot, J., dissenting).

17

Justices below disagreed. This disagreement further warrants an exercise of the Court's power of discretionary review. *See*, Tex.R.App.P. 66.3(e)("[W]hether the justices of a court of appeals have disagreed on a material question of law necessary to the court's decision.")

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, this Petition for Discretionary Review should be granted.

Respectfully submitted,

*/s/Richard Gladden*
Texas Bar No. 07991330
1200 West University, Suite 100
Denton, Texas 76201
940/ 323-9307 (voice)
940/539-0093 (fax)
richscot1@hotmail.com (email)
*Attorney for Petitioner*

## CERTIFICATE OF COMPLIANCE

This is to certify, pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, that this petition was computer-generated; that it contains less than 3,343 words (*including* the items excepted by Tex.R.App.P. 9.4(i)(1)); and that it therefore complies with the 4,500 word limitation stated in Rule 9.4(i)(2)(D) of the Texas Rules of Appellate Procedure.

*/s/Richard Gladden*

18

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing brief was served by hand delivery on the Attorneys of Record for the State of Texas, Denton County Criminal District Attorney **Paul Johnson**, at his office located at 1450 East McKinney, Denton, Texas 76201, on this 6th day of July, 2014; by U.S. mail on the State Prosecuting Attorney, **Lisa C. McMinn**, directed to her office mailing address, to wit: P.O. Box P.O. Box 13046, Capitol Station, Austin, Texas 78711, on this 6th day of July, 2015; and on both of the foregoing counsel, on the same date, using the electronic filing system operated by TexFile; all in accordance with Rules 9.5 and 68.11 of the Texas Rules of Appellate Procedure.

*/s/Richard Gladden*

# PETITION APPENDIX "A"

# TO

# PETITION FOR DISCRETIONARY

# REVIEW

Majority Opinion and Judgment, *O'Bryan v. State*,
No. 02-14-00313-CR, 2015 WL 3422093
(Tex.App. Fort Worth, May 28, 2015)
(not yet published)



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00313-CR

ROBERT O'BRYAN                                              APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
TRIAL COURT NO. CR-2013-08057-A

----------

## OPINION

----------

## I. Introduction

In two issues, Appellant Robert O'Bryan appeals the denial of his motion to suppress, arguing that his stop and detention was without reasonable suspicion and therefore violated the Fourth Amendment to the U.S. Constitution. We affirm.

## II. Background

The facts of this case are undisputed. On February 22, 2013, Northlake Police Sergeant Dwight Thornton ran a routine records check on a green four-door Pontiac through the National Crime Information Center (NCIC) and the Texas Crime Information Center (TCIC); a report from Denton Police Department (Denton P.D.) indicated that the vehicle was reported stolen. After receiving the report, Sergeant Thornton contacted Denton County Sheriff Department Dispatch to verify the information. Dispatch confirmed that the car was stolen, so Sergeant Thornton requested additional units. Two other units arrived, and the officers performed a felony stop on the vehicle. O'Bryan was the only person in the car.

After he was detained, Sergeant Thornton reported the VIN number of the vehicle to Denton County Dispatch, who then matched it with their records and confirmed with Denton P.D. Dispatch that the vehicle was stolen. While waiting on the confirmation, Sergeant Thornton began investigating the unauthorized use of a motor vehicle offense. Upon searching the vehicle, he found a pill bottle with multiple pills inside and no label on the outside. Upon further inspection, Sergeant Thornton discovered the pills to be prescription drugs for which O'Bryan did not have a valid prescription. O'Bryan was arrested and the car was impounded.

As it turned out, the car was not stolen. Although O'Bryan's father, Charles O'Bryan, reported the vehicle stolen in August 2012, it was recovered

one month later, in September 2012. O'Bryan filed a motion to suppress all of the evidence, arguing, in essence, that since the stolen vehicle information Sergeant Thornton relied upon was erroneous, the stop was without reasonable suspicion, thereby violating the Fourth Amendment.

At the suppression hearing, Sergeant Thornton testified to the facts leading up to O'Bryan's arrest, and Denton P.D. Communications Officer Patricia Killebrew testified about her efforts to confirm the status of the vehicle as stolen.

Officer Killebrew testified that on February 22, she received a dispatch requesting confirmation of the stolen vehicle. She ran the plate number through "the system," and it confirmed that the car was stolen. She then pulled the actual paper report, which further verified the car was stolen. The following day, Officer Killebrew learned from Sergeant Frank Padgett that the information she had obtained and relayed regarding the stolen vehicle was erroneous.[1]

Officer Killebrew also provided testimony about departmental policies regarding the input and removal of data into NCIC. She stated that when Dispatch confirms a vehicle as stolen and the officer recovers it in the field, like in this case, then Dispatch removes the vehicle from NCIC at the time of

---

[1]According to the record, her conversation with Sergeant Padgett was prompted by a telephone inquiry the Sergeant had received from O'Bryan's sister, Lori Reeves, who informed Sergeant Padgett that although the impounded vehicle had at one time been reported stolen, it had since been recovered. Sergeant Padgett then followed up on this conversation with Officer Killebrew.

3

confirmation.[2] In the alternative, if a vehicle is recovered, but there has been no call for confirmation, then the officer creates a supplemental report that is forwarded to Dispatch, and Dispatch removes the vehicle from NCIC upon receipt of the report. In this case, although an officer prepared a supplemental report when the car was recovered, the NCIC record was not updated.[3]

Officer Killebrew testified that the mistake in not removing this vehicle from NCIC could have occurred in one of two ways. Either the officer never forwarded the supplemental report to Dispatch, or he did deliver the supplemental report and Dispatch failed to act on it. Regardless of who made the mistake, Officer Killebrew confirmed that the error occurred within the Denton P.D.

The trial court denied O'Bryan's motion to suppress and entered findings of fact and conclusions of law.

### III. Suppression

O'Bryan does not dispute that reasonable suspicion existed at the time the officer entered the stolen vehicle report into NCIC. However, O'Bryan argues that applying the collective knowledge doctrine, reasonable suspicion ceased to exist once the vehicle was recovered. Therefore, O'Bryan argues, because

---

[2]Officer Killebrew stated that she removed the vehicle from NCIC immediately after she received Sergeant Thornton's call for confirmation.

[3]Nor was the supplemental report included among the documents available to Officer Killebrew—on the computer or in paper form—in the file she reviewed to confirm the stolen vehicle.

reasonable suspicion no longer existed when Sergeant Thornton pulled him over, O'Bryan's Fourth Amendment rights were violated.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When the trial court makes explicit fact-findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact-findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo unless its explicit fact-findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

5

## B. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has

6

specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

## C. Analysis

O'Bryan asserts that when assessing whether the detention of O'Bryan was supported by reasonable suspicion we must consider the "collective knowledge" of all law enforcement authorities at the time the stop occurred, including police knowledge that the vehicle had been recovered and returned to its owner prior to the stop. As will be discussed below, theoretically the collective knowledge doctrine could be applied either permissively or prohibitively. In this case, O'Bryan seeks a prohibitive application of the doctrine.

The collective knowledge doctrine, or the fellow officer rule, is the "principle that an investigative stop or an arrest is valid even if the law-enforcement officer lacks personal knowledge to establish reasonable suspicion or probable cause[,] as long as the officer is acting on the knowledge of another officer and the collective knowledge of the law-enforcement office." Black's Law Dictionary 735 (10th ed. 2014). This doctrine was first discussed by the United States Supreme Court in 1971 in the context of probable cause to support an arrest, *see Whiteley v. Warden*, 401 U.S. 560, 91 S. Ct. 1031 (1971), and was extended by the Court

7

in 1985 to encompass reasonable suspicion to detain a person briefly in an attempt to obtain further information, s*ee U.S. v. Hensley*, 469 U.S. 221, 105 S. Ct. 675 (1985). Both *Whiteley* and *Hensley* apply the collective knowledge doctrine in a permissive manner. The Texas Court of Criminal Appeals has also applied this doctrine, but only permissively as well. *See Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982) (op. on reh'g).

O'Bryan points out that while the collective knowledge doctrine has been applied only permissively in Texas, other jurisdictions also apply the doctrine prohibitively:

> The "fellow officer" or "collective knowledge" rule cannot function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information.

*People v. Ramirez*, 668 P.2d 761, 765 (Cal. 1986). In urging this court to permit a prohibitive application of the doctrine in this case, O'Bryan essentially argues that if collective knowledge can be used to form a basis to find reasonable suspicion, then collective knowledge can also be used to negate reasonable suspicion.

While four states[4] have extended the collective knowledge doctrine to apply prohibitively, Texas is not one of them.

---

[4]California, Maryland, New York, and Washington

8

Whether as a repository for collective knowledge or as an historically trustworthy source of information, NCIC—and its records—has received widespread acceptance as providing a sufficient basis for both probable cause and reasonable suspicion. *See Delk v. State*, 855 S.W.2d 700, 711 (Tex. Crim. App.), *cert. denied*, 510 U.S. 982 (1993) (holding that information obtained from the NCIC system provides an investigating officer with reasonable suspicion to detain a driver and conduct further investigation); *Stevens v. State*, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984) (holding that the NCIC stolen-vehicle return provided independent probable cause to arrest appellant for theft of the automobile); *see also Williams v. State*, No. 14-08-00268-CR, 2009 WL 3643513, at *4 (Tex. App.—Houston [14th Dist.] Nov. 5, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that NCIC provided reasonable suspicion to stop appellant who was driving a vehicle that was reported stolen); *Nevels v. State*, No. 14-13-00497-CR, 2004 WL 769804, at *2 (Tex. App.— Houston [14th Dist.] Apr. 13, 2004, no pet.) (mem. op., not designated for publication) (holding that an NCIC report that a car was stolen is sufficient to support probable cause); *Nunnally v. State*, No. 11-03-00237-CR, 2004 WL 292051, at *2 (Tex. App.—Eastland Feb. 12, 2004, pet. ref'd) (opinion, not designated for publication) (noting that the officer had probable cause to arrest the appellant based on computer information he received); *Givens v. State*, 949 S.W.2d 449, 452 (Tex. App.—Fort Worth 1997, pet. ref'd) (recognizing that the officer's reliance on NCIC provided probable cause for the arrest).

And while no Texas courts have directly addressed the prohibitive application of the collective knowledge doctrine when considering reasonable suspicion or probable cause, in considering NCIC information as a basis for probable cause and reasonable suspicion, they have addressed the possibility of error and its effect on these burdens. *See Brown v. State*, 986 S.W.2d 50, 54 (Tex. App.—Dallas 1999, no pet.) (holding that "it is not necessary for the NCIC database of stolen vehicles to be accurate on every occasion for an NCIC hit to establish probable cause," and an officer may rely on the information even if it is later proved to be erroneous); *see also Thornton v. State*, No. 10-12-00431-CR, 2014 WL 813745, at *2 (Tex. App.—Waco Feb. 27, 2014, no pet.) (mem. op., not designated for publication) (holding actual ownership of a vehicle was not relevant to the detention of the appellant because the officer had reasonable suspicion to detain appellant based on NCIC information, even if it was later proven to be incorrect), *Cardiel v. State*, No. 03-11-00220-CR, 2012 WL 2077908, at *1 n.1 (Tex. App.—Austin, June 7, 2012, no pet.) (mem. op., not designated for publication) (explaining that even though appellant's stop was based on a stolen vehicle report that turned out to be incorrect, the fact the report was mistaken did not render the stop or arrest invalid); *Mount v. State*, 217 S.W.3d 716, 728 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (op. on reh'g) ("An investigatory detention or an arrest is not invalid merely because an officer relies upon reasonably trustworthy information that later proves to be

10

erroneous."); *Givens*, 949 S.W.2d at 451 (holding that extrinsic proof of NCIC accuracy is not required to overcome a motion to suppress).

In *Brown v. State*, the Fifth Court of Appeals states that

[I]t is well established an arrest is not invalid merely because an officer relies on reasonably trustworthy information which later proves to be erroneous. Therefore, it is not necessary for the NCIC database of stolen vehicles to be accurate on every occasion for an NCIC hit to establish probable cause. On the basis of the current record, we have no reason to question whether stolen vehicle information obtained from the NCIC is *reasonably* trustworthy. Accordingly, we conclude the NCIC information available to the officers here established probable cause for the warrantless arrest.

986 S.W.2d at 53–54 (internal citations omitted).

For the reasons stated above, we hold that the NCIC report was sufficient to establish reasonable suspicion and therefore conclude that O'Bryan's constitutional rights were not violated by his warrantless arrest. We overrule his first issue.[5]

## IV.  Conclusion

Having overruled O'Bryan's dispositive issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

---

[5]Having overruled O'Bryan's first issue, we need not reach his second issue.  *See* Tex. R. App. P. 47.1.

11

PANEL:  DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  May 28, 2015



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00313-CR

| | | |
|---|---|---|
| Robert O'Bryan | § | From County Criminal Court No. 1 |
| | § | of Denton County (CR-2013-08057-A) |
| | § | |
| v. | § | May 28, 2015 |
| | § | Opinion by Justice Sudderth |
| | § | Dissent by Justice Dauphinot |
| The State of Texas | § | (p) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By _/s/ Bonnie Sudderth_____
    Justice Bonnie Sudderth

# PETITION APPENDIX "B"

# TO

# PETITION FOR DISCRETIONARY

# REVIEW

Dissenting Opinion (Per Dauphinot, J.)
*O'Bryan v. State*, No. 02-14-00313-CR, 2015 WL
3422093 (Tex.App. Fort Worth, May 28, 2015)
(not yet published)



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00313-CR

ROBERT O'BRYAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
TRIAL COURT NO. CR-2013-08057-A

----------

## DISSENTING OPINION

----------

Respectfully, I cannot join the thoughtful majority. I do not understand the majority's hypothesis that in Texas, imputed knowledge may only expand the authority of the prosecution but may not protect the constitutional rights of the accused.

The obligations stemming from imputed knowledge within the prosecution team have long been recognized in Texas courts. In 1989, in an early

exoneration case, the Texas Court of Criminal Appeals concluded that Randall

Dale Adams had been convicted of capital murder on perjured testimony.[1]  The

Texas Court of Criminal Appeals explained,

> The issue of Miller's perjurious testimony regarding her identification of the applicant involves both the suppression of evidence favorable to the accused and the State's knowing use of false testimony.  During the applicant's trial, after the three rebuttal witnesses had testified and Miller had identified the applicant, the State closed.  The applicant's attorney then belatedly requested a hearing outside the presence of the jury in order to determine whether Miller's identification testimony had been tainted by an improper photo spread or lineup.  The trial judge observed that the request was untimely because Miller had already identified the applicant.  Nevertheless, he permitted the hearing to allow the applicant to perfect a bill of exception.  It was during this hearing that Miller perjured herself by testifying falsely that she had identified the applicant in a lineup and that no one had influenced her in her identification.  After the hearing the trial judge commented that he considered the issue of a tainted identification to have been waived by the defense, but emphasized that the defense had the right to go into it in front of the jury.  In this regard it must be remembered that at this time the applicant had no knowledge of the truth about the identification or the prior inconsistent statement.
>
> Following his comments to counsel, the judge concluded[] that Miller's identification testimony "was not influenced either by the witness having seen photographs of the defendant or by the witness having viewed the defendant in a lineup of people conducted by law enforcement authorities."  He further stated:  "The Court finds there is no taint, that the identification of the witnesses in court is based solely on the witnesses having viewed the defendant at the time and place where the offense was committed as alleged in the indictment."  He also comment[ed] that irrespective of his factual findings a waiver of a defect in the identification had occurred.
>
> Mulder testified that he did not know Miller had identified someone other than the appellant in the lineup, nor did he know that

---

[1]*Ex parte Adams*, 768 S.W.2d 281, 290–91 (Tex. Crim. App. 1989).

the officer in charge of the lineup told her who she should have identified. However, this is insufficient to remove the taint of the prosecution's knowing use of perjured testimony. As previously noted, the United States Supreme Court has expressly recognized that when confronted with perjurious testimony the prosecutor has a duty to correct it. Further, whether the prosecutor had actual knowledge of the falsity of the testimony is irrelevant. If the prosecutor should have known is sufficient. Thus, the Supreme Court has endorsed the imputation of knowledge, at least from one prosecutor to another. However, the extent of this imputation of knowledge has been expanded. In *Williams v. Griswald*, the court of appeals stated: "It is of no consequence that the facts pointed to may support only knowledge of the police because such knowledge will be imputed to state prosecutors." In *United States v. Antone*, the court of appeals observed that it has "declined to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel."

The Dallas police officer that "helped" Miller was by her own admission in charge of the lineup. Consequently, as a part of the investigating team his knowledge of Miller's lack of identification at the lineup and his assistance to her is imputed to Mulder. Consequently, when Miller testified that she had identified the applicant in a lineup Mulder had an obligation to correct the perjured testimony.[2]

The *Adams* court "declined to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel."[3]

---

[2]*Id.* at 291–92 (citations omitted).

[3]*Id.* at 292; s*ee also Ex parte Castellano*, 863 S.W.2d 476, 484–85 (Tex. Crim. App. 1993) (holding that peace officer who was not assigned to an arson case but who took it upon himself to assist and engage in perjury for private reasons was nevertheless acting under color of law and part of the prosecutorial team).

The imputed knowledge rule is still alive and well. In 2014, the Texas Court of Criminal Appeals stated,

> In *Moulton*, the Supreme Court indicated that a *Massiah* violation occurs only if the State "knowingly circumvented" the right to counsel. The court of appeals's opinion suggests that a knowing circumvention did not occur because Midland law enforcement was unaware that appellant had counsel. Appellant's position is that the knowledge of Ector County law enforcement should be imputed to Midland County law enforcement.
>
> Appellant has the better of the argument. In *Michigan v. Jackson*, the Supreme Court held that the State is responsible, in the Sixth Amendment context, for the knowledge of all of its actors:
>
>> Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. For the Sixth Amendment concerns the confrontation between the State and the individual. One set of state actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another state actor (the court).
>
> In so concluding, the Supreme Court cited and quoted from *Moulton*, a *Massiah* case. It is true that, in *Montejo v. Louisiana*, the Supreme Court overruled *Jackson* insofar as it imposed a prophylactic rule forbidding interrogation once the accused has requested counsel. But the *Montejo* decision expressly stated that it was not concerned with the substantive scope of the Sixth Amendment right to counsel, and in so saying it cited both *Moulton* and *Massiah*. We do not agree with the court of appeals that the Supreme Court's decision to overrule *Jackson* constituted an abandonment of the rule of imputing knowledge to the State.[4]

The majority is correct that, generally, the police may detain a person based on an entry in NCIC. But in the case now before this court, the Denton

---

[4]*Rubalcado v. State*, 424 S.W.3d 560, 573–74 (Tex. Crim. App. 2014) (citations omitted).

4

police department was aware that the car was not stolen and that there should be no NCIC entry reporting that it was stolen. No one knows why the stolen vehicle report was not properly withdrawn. But the knowledge of the Denton police department is imputed to Northlake police.[5] Consequently, police had no reasonable suspicion to support their original detention of Appellant.

The majority appears to suggest a good faith exception to the warrant requirement when the police rely on NCIC. But Texas recognizes only the good faith exception found in the Texas Code of Criminal Procedure:

> It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.[6]

In the case now before this court, there is no warrant, and there is no requirement that a neutral magistrate screen the information before it can be entered on NCIC. Under the facts of this case, good faith does not justify the unlawful detention of Appellant, nor does the NCIC entry that should have been withdrawn because the Denton police candidly explained that they knew the car had not been stolen, that it had been reported to them as stolen in error, and that the entry should have been withdrawn. The original detention of Appellant was unlawful.

---

[5] *See id.* at 574.

[6] Tex. Code Crim. Proc. Ann. art. 38.23(b) (West 2005).

5

For these reasons, I must respectfully dissent.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: May 28, 2015

6