

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00313-CR

ROBERT O'BRYAN                                                      APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
TRIAL COURT NO. CR-2013-08057-A

----------

## OPINION

----------

## I. Introduction

In two issues, Appellant Robert O'Bryan appeals the denial of his motion to suppress, arguing that his stop and detention was without reasonable suspicion and therefore violated the Fourth Amendment to the U.S. Constitution. We affirm.

## II. Background

The facts of this case are undisputed. On February 22, 2013, Northlake Police Sergeant Dwight Thornton ran a routine records check on a green four-door Pontiac through the National Crime Information Center (NCIC) and the Texas Crime Information Center (TCIC); a report from Denton Police Department (Denton P.D.) indicated that the vehicle was reported stolen. After receiving the report, Sergeant Thornton contacted Denton County Sheriff Department Dispatch to verify the information. Dispatch confirmed that the car was stolen, so Sergeant Thornton requested additional units. Two other units arrived, and the officers performed a felony stop on the vehicle. O'Bryan was the only person in the car.

After he was detained, Sergeant Thornton reported the VIN number of the vehicle to Denton County Dispatch, who then matched it with their records and confirmed with Denton P.D. Dispatch that the vehicle was stolen. While waiting on the confirmation, Sergeant Thornton began investigating the unauthorized use of a motor vehicle offense. Upon searching the vehicle, he found a pill bottle with multiple pills inside and no label on the outside. Upon further inspection, Sergeant Thornton discovered the pills to be prescription drugs for which O'Bryan did not have a valid prescription. O'Bryan was arrested and the car was impounded.

As it turned out, the car was not stolen. Although O'Bryan's father, Charles O'Bryan, reported the vehicle stolen in August 2012, it was recovered

one month later, in September 2012. O'Bryan filed a motion to suppress all of the evidence, arguing, in essence, that since the stolen vehicle information Sergeant Thornton relied upon was erroneous, the stop was without reasonable suspicion, thereby violating the Fourth Amendment.

At the suppression hearing, Sergeant Thornton testified to the facts leading up to O'Bryan's arrest, and Denton P.D. Communications Officer Patricia Killebrew testified about her efforts to confirm the status of the vehicle as stolen.

Officer Killebrew testified that on February 22, she received a dispatch requesting confirmation of the stolen vehicle. She ran the plate number through "the system," and it confirmed that the car was stolen. She then pulled the actual paper report, which further verified the car was stolen. The following day, Officer Killebrew learned from Sergeant Frank Padgett that the information she had obtained and relayed regarding the stolen vehicle was erroneous.[1]

Officer Killebrew also provided testimony about departmental policies regarding the input and removal of data into NCIC. She stated that when Dispatch confirms a vehicle as stolen and the officer recovers it in the field, like in this case, then Dispatch removes the vehicle from NCIC at the time of

---

[1]According to the record, her conversation with Sergeant Padgett was prompted by a telephone inquiry the Sergeant had received from O'Bryan's sister, Lori Reeves, who informed Sergeant Padgett that although the impounded vehicle had at one time been reported stolen, it had since been recovered. Sergeant Padgett then followed up on this conversation with Officer Killebrew.

3

confirmation.[2]  In the alternative, if a vehicle is recovered, but there has been no call for confirmation, then the officer creates a supplemental report that is forwarded to Dispatch, and Dispatch removes the vehicle from NCIC upon receipt of the report.  In this case, although an officer prepared a supplemental report when the car was recovered, the NCIC record was not updated.[3]

Officer Killebrew testified that the mistake in not removing this vehicle from NCIC could have occurred in one of two ways.  Either the officer never forwarded the supplemental report to Dispatch, or he did deliver the supplemental report and Dispatch failed to act on it.  Regardless of who made the mistake, Officer Killebrew confirmed that the error occurred within the Denton P.D.

The trial court denied O'Bryan's motion to suppress and entered findings of fact and conclusions of law.

### III.  Suppression

O'Bryan does not dispute that reasonable suspicion existed at the time the officer entered the stolen vehicle report into NCIC.  However, O'Bryan argues that applying the collective knowledge doctrine, reasonable suspicion ceased to exist once the vehicle was recovered. Therefore, O'Bryan argues, because

---

[2]Officer Killebrew stated that she removed the vehicle from NCIC immediately after she received Sergeant Thornton's call for confirmation.

[3]Nor was the supplemental report included among the documents available to Officer Killebrew—on the computer or in paper form—in the file she reviewed to confirm the stolen vehicle.

4

reasonable suspicion no longer existed when Sergeant Thornton pulled him over, O'Bryan's Fourth Amendment rights were violated.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When the trial court makes explicit fact-findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact-findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo unless its explicit fact-findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has

6

specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

## C. Analysis

O'Bryan asserts that when assessing whether the detention of O'Bryan was supported by reasonable suspicion we must consider the "collective knowledge" of all law enforcement authorities at the time the stop occurred, including police knowledge that the vehicle had been recovered and returned to its owner prior to the stop. As will be discussed below, theoretically the collective knowledge doctrine could be applied either permissively or prohibitively. In this case, O'Bryan seeks a prohibitive application of the doctrine.

The collective knowledge doctrine, or the fellow officer rule, is the "principle that an investigative stop or an arrest is valid even if the law-enforcement officer lacks personal knowledge to establish reasonable suspicion or probable cause[,] as long as the officer is acting on the knowledge of another officer and the collective knowledge of the law-enforcement office." Black's Law Dictionary 735 (10th ed. 2014). This doctrine was first discussed by the United States Supreme Court in 1971 in the context of probable cause to support an arrest, *see Whiteley v. Warden*, 401 U.S. 560, 91 S. Ct. 1031 (1971), and was extended by the Court

7

in 1985 to encompass reasonable suspicion to detain a person briefly in an attempt to obtain further information, s*ee U.S. v. Hensley*, 469 U.S. 221, 105 S. Ct. 675 (1985). Both *Whiteley* and *Hensley* apply the collective knowledge doctrine in a permissive manner. The Texas Court of Criminal Appeals has also applied this doctrine, but only permissively as well. *See Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982) (op. on reh'g).

O'Bryan points out that while the collective knowledge doctrine has been applied only permissively in Texas, other jurisdictions also apply the doctrine prohibitively:

> The "fellow officer" or "collective knowledge" rule cannot function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information.

*People v. Ramirez*, 668 P.2d 761, 765 (Cal. 1986). In urging this court to permit a prohibitive application of the doctrine in this case, O'Bryan essentially argues that if collective knowledge can be used to form a basis to find reasonable suspicion, then collective knowledge can also be used to negate reasonable suspicion.

While four states[4] have extended the collective knowledge doctrine to apply prohibitively, Texas is not one of them.

---

[4]California, Maryland, New York, and Washington

Whether as a repository for collective knowledge or as an historically trustworthy source of information, NCIC—and its records—has received widespread acceptance as providing a sufficient basis for both probable cause and reasonable suspicion. *See Delk v. State*, 855 S.W.2d 700, 711 (Tex. Crim. App.), *cert. denied*, 510 U.S. 982 (1993) (holding that information obtained from the NCIC system provides an investigating officer with reasonable suspicion to detain a driver and conduct further investigation); *Stevens v. State*, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984) (holding that the NCIC stolen-vehicle return provided independent probable cause to arrest appellant for theft of the automobile); *see also Williams v. State*, No. 14-08-00268-CR, 2009 WL 3643513, at *4 (Tex. App.—Houston [14th Dist.] Nov. 5, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that NCIC provided reasonable suspicion to stop appellant who was driving a vehicle that was reported stolen); *Nevels v. State*, No. 14-13-00497-CR, 2004 WL 769804, at *2 (Tex. App.—Houston [14th Dist.] Apr. 13, 2004, no pet.) (mem. op., not designated for publication) (holding that an NCIC report that a car was stolen is sufficient to support probable cause); *Nunnally v. State*, No. 11-03-00237-CR, 2004 WL 292051, at *2 (Tex. App.—Eastland Feb. 12, 2004, pet. ref'd) (opinion, not designated for publication) (noting that the officer had probable cause to arrest the appellant based on computer information he received); *Givens v. State*, 949 S.W.2d 449, 452 (Tex. App.—Fort Worth 1997, pet. ref'd) (recognizing that the officer's reliance on NCIC provided probable cause for the arrest).

And while no Texas courts have directly addressed the prohibitive application of the collective knowledge doctrine when considering reasonable suspicion or probable cause, in considering NCIC information as a basis for probable cause and reasonable suspicion, they have addressed the possibility of error and its effect on these burdens. *See Brown v. State*, 986 S.W.2d 50, 54 (Tex. App.—Dallas 1999, no pet.) (holding that "it is not necessary for the NCIC database of stolen vehicles to be accurate on every occasion for an NCIC hit to establish probable cause," and an officer may rely on the information even if it is later proved to be erroneous); *see also Thornton v. State*, No. 10-12-00431-CR, 2014 WL 813745, at *2 (Tex. App.—Waco Feb. 27, 2014, no pet.) (mem. op., not designated for publication) (holding actual ownership of a vehicle was not relevant to the detention of the appellant because the officer had reasonable suspicion to detain appellant based on NCIC information, even if it was later proven to be incorrect), *Cardiel v. State*, No. 03-11-00220-CR, 2012 WL 2077908, at *1 n.1 (Tex. App.—Austin, June 7, 2012, no pet.) (mem. op., not designated for publication) (explaining that even though appellant's stop was based on a stolen vehicle report that turned out to be incorrect, the fact the report was mistaken did not render the stop or arrest invalid); *Mount v. State*, 217 S.W.3d 716, 728 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (op. on reh'g) ("An investigatory detention or an arrest is not invalid merely because an officer relies upon reasonably trustworthy information that later proves to be

10

erroneous."); *Givens*, 949 S.W.2d at 451 (holding that extrinsic proof of NCIC accuracy is not required to overcome a motion to suppress).

In *Brown v. State*, the Fifth Court of Appeals states that

[I]t is well established an arrest is not invalid merely because an officer relies on reasonably trustworthy information which later proves to be erroneous. Therefore, it is not necessary for the NCIC database of stolen vehicles to be accurate on every occasion for an NCIC hit to establish probable cause. On the basis of the current record, we have no reason to question whether stolen vehicle information obtained from the NCIC is *reasonably* trustworthy. Accordingly, we conclude the NCIC information available to the officers here established probable cause for the warrantless arrest.

986 S.W.2d at 53–54 (internal citations omitted).

For the reasons stated above, we hold that the NCIC report was sufficient to establish reasonable suspicion and therefore conclude that O'Bryan's constitutional rights were not violated by his warrantless arrest. We overrule his first issue.[5]

## IV. Conclusion

Having overruled O'Bryan's dispositive issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

---

[5]Having overruled O'Bryan's first issue, we need not reach his second issue. *See* Tex. R. App. P. 47.1.

PANEL:  DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  May 28, 2015