ACCEPTED
03-15-00490-CR
8168375
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/9/2015 5:14:50 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00490-CR & 03-15-00491-CR

# IN THE COURT OF APPEALS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/9/2015 5:14:50 PM
JEFFREY D. KYLE
Clerk

# FOR THE THIRD SUPREME JUDICIAL DISTRICT

# OF TEXAS

---

ERNEST PEREZ, Appellant

VS.

THE STATE OF TEXAS, Appellee

---

From the 274th District Court of
Hays County, Texas,
the Honorable Judge R. Bruce Boyer, presiding

## APPELLANT'S BRIEF

Ken Mahaffey
Counsel for Appellant
P. O. Box 684585
Austin, Texas 78768
Phone & Fax (512) 444-6557
St. Bar No. 12830050
*Ken_Mahaffey@yahoo.com*

ORAL ARGUMENT REQUESTED ONLY IF STATE REQUESTS ARGUMENT

**TABLE OF CONTENTS**

IDENTITY OF JUDGE, PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT OF ERROR NUMBER ONE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Because the dispatcher failed to tell the stopping officer that there was no arrest warrant for suspect he was seeking, the officer lacked reasonable suspicion to stop Appellant's vehicle.**

I. Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II. The call to police did not justify a stop. . . . . . . . . . . . . . . . . . . . . . . 3
III. Collective Knowledge Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . 3
IV. Failure to communicate complete information not litigated in Texas. . . 4
IV. Collective Knowledge Doctrine should apply both
    "Permissively and Prohibitively.". . . . . . . . . . . . . . . . . . . . . . . . . 5
VI. Stop not supported by reasonable suspicion. . . . . . . . . . . . . . . . . . . . 7

POINT OF ERROR NUMBER TWO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**When moments after the stop, the officer learned Appellant was not involved in the investigation he was undertaking any extension of the detention was improper.**

I. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
II. Warrantless detentions should not exceed the purpose of the stop. . . . . . 8

III. Any reason for detaining Appellant was dispelled when the officers determined Appellant was not involved in the incident being investigated.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. Further detention based on observation of bullet box was unwarranted.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V. Conclusion - the stop was improperly prolonged beyond its original purpose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE AND WORD COUNT COMPLIANCE . . . . . . . 13

ii

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

The following is a list of all parties to the trial court's final judgment and their counsel in the trial court:

| | |
|---|---|
| 1. Trial Judge: | R. Bruce Boyer<br>274th District Court<br>712 S. Stagecoach Trail, 3rd Fl.<br>San Marcos TX 78666 |
| 2. Appellant: | Ernest Perez<br>Holliday Unit<br>02016895<br>295 I.H. 45 North<br>Huntsville, TX 77320-8443 |
| 3. Defense Counsel: | Todd Dudley<br>Attorney at Law<br>812 San Antonio St., G5<br>Austin Texas 78701 |
| 4. The State of Texas: | John Crouch<br>Hays Co. D. A.'s Office<br>712 S. Stagecoach Trail<br>San Marcos TX 78666 |

# INDEX OF AUTHORITIES

**CASES**:

**State Cases**:

*Albo v. State*, 477 So.2d 1071  (Fla. App. 3 Dist. 1985). . . . . . . . . . . . . . . . 6

*Brown v. State*, 986 S.W.2d 50 (Tex. App. -
       Dallas 1999, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Commonwealth v. Hecox*, 35 Mass.App.Ct. 277,
       619 N.E.2d 339, 344 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Davis v. State*, 947 S.W.2d 240 (Tex. Crim. App. 1997). . . . . . . . . . . . . 9, 12

*Jackson v. State*, 745 S.W.2d 4 (Tex. Crim. App. 1988). . . . . . . . . . . . . . . . 3

*Jameson v. Commonwealth*, 2012-CA-1478-MR
       (Ct. App. Ky. September 27, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Morfin v. State*, 34 S.W.3d 664 (Tex. App. -
       San Antonio 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*O'Bryan v. State*, 464 S.W.3d 875 (Tex. App.-
       Fort Worth 2015, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Ott v. State*, 600 A.2d 111, 325 Md. 206 (Md. 1992). . . . . . . . . . . . . . . . . . 6

*People v. Fields*, 785 P.2d 611 (Colo.1990). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*People v. Ramirez*, 668 P.2d 761 (Cal. 1986). . . . . . . . . . . . . . . . . . . . . . . . . 6

*St. George v. State*, 237 S.W.3d 720 (Tex. Crim. App. 2007). . . . . . . . . 9, 12

*State v. Moore*, 614 A.2d 1360, 260 N.J.Super. 12
       (N.J.Super.A.D. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. O'Cain*, 31 P.3d 733, 108 Wn.App. 542
    (Wash.App. Div. 1 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. Peterson*, 830 P.2d 854, 171 Ariz. 333
    (Ariz.App. Div. 1 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Federal Cases**:

*Florida v. Royer*,460 U.S. 491 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ohio v. Robinette,* 519 U.S. 33 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Leon*, 468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Valadez*, 267 F.3d 395 (5th Cir. 2001). . . . . . . . . . . . . 10, 12

*Whiteley v. Warden*, 401 U.S. 560 (1971). . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7

**Constitutional Provisions**:

**Federal Constitution**:

U.S. CONST. AMEND. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

## STATEMENT OF PROCEDURAL HISTORY

Ernest Perez was indicted for Unlawful Possession of a Firearm by a Felon and Possession of Methamphetamine more than 4 grams but less than 200 grams. The offenses were alleged to have been committed on October 30, 2013 in Hays County, Texas. Appellant entered a plea of not guilty. After a trial before a jury, Appellant was convicted and sentenced to 30 years. On July 6, 2015, Appellant perfected an appeal to this Court.

# STATEMENT OF FACTS

## I. Overview.

The principal issues in this case are the propriety of an initial warrantless detention and extension of that detention after any suspicion concerning the stop was dispelled. An eventual search of Appellant's truck revealed a hand gun and methamphetamine. More methamphetamine was found on Appellant's person when he was booked into jail. Because Appellant had a prior felony conviction, he was charged with both unlawfully possessing the firearm and possession of methamphetamine. A jury found him guilty. The trial court assessed punishment and, after finding two prior convictions, sentenced Appellant to 30 years to run concurrently.

## II. The Stop.

Around 8:00 p.m. on October 30, 2013, Officer Samuel Myers of the San Marcos Police Department was dispatched to a 7-11 convenience store in San Marcos, Texas. (RR4 11 - 12). A video from his patrol car recording the stop and search was admitted as State's Motion Exhibit 1.[1] (RR4 22).

The information available to Myers as he arrived at the scene was as follows:

---

[1] The Exhibits Volume of the Reporter's Record lists this exhibit as "STATE'S EXHIBIT MTS NO. 1." (RR8 6).

The dispatcher told him a woman had called 911. (RR4 12, 17). The caller stated a female suspect had damaged her car a few days earlier. (RR4 13, 17). The suspect's name was Kristin Watts. (RR4 13). Watts was currently at the 7-11 and the caller was observing her get into a gray truck. (RR4 13). The dispatcher also reported that the caller said that she had reported damage incident and she believed the police had obtained a warrant for Watts. (RR4 12, 17 - 18). A tape of the 911 call admitted into evidence revealed Watts did not tell the dispatcher there was a warrant. (SX1 2:42).

When Myers arrived, he saw the truck and activated his lights. (RR4 14; SX MTS 1 07:58:10). Another officer, Daniel Royston, arrived at the scene as backup. (RR4 16). Both officers testified Appellant was not free to leave from that point. (RR4 37, 49). Myers went to the truck and spoke with Appellant through the driver's window. (RR4 14; SX1 07:58:20). Royston approached the passenger side. (RR4 71; SX MTS 1 07:58:20).

Myers saw there were two males in the front seat and a female in the back seat. (RR4 14). Appellant was the driver. (RR4 14). Myers recognized Appellant from an unrelated call earlier in the day. (RR4 23). Meyers then asked if Appellant had been in any accidents and learned he had not. (RR4 15, 43). He did not observe any collision damage to Appellant's truck. (RR4 38). Myers also confirmed Watts was in the vehicle. (RR4 14).

## II. The Initial Search by Flashlight.

While Myers spoke with Appellant, Royston walked up and down the passenger side of the truck, shining his flashlight. (RR4 72 - 73;  SX1 07:58:20 - 07:58:40). The truck had tinted windows and he was not able to see inside completely. (RR4 72). The record is conflicting, but Royston eventually either opened the passenger door or had the passenger roll down a window.  *Compare* RR4 73 - (Royston said he opened door) *with* RR4 90 - 91 (Royston said he instructed passenger to open window). In any event, Royston testified he saw a box of .45 caliber ammunition on the back seat. (RR4 24, 92, 102 - 103). He added that this made him suspect there was a firearm in the truck. (RR4 74 ).

After a brief 15 second conversation with Appellant (SX1 07:58:20 - 07:58:45),  Myers went to interview the caller who was waiting by the gas pumps. (RR4 14, 17). As both Myers and Royston walked away from the truck, Myers told Royston that Appellant was a criminal gang member. (RR4 23, 75; SX1 07:58:49). Myers had no knowledge that Appellant had any felony criminal history. (RR4 29).

## III. Focus and Abeyance of Suspicion.

Myers then spoke with the caller and was told the incident occurred several days previously. (RR4 17). He decided to check to see if there were any warrants for

Watts' arrest. (RR4 18). At that point, the video records Myers unequivocally telling Royston that, "[T]he guys didn't do anything except that she happens to be in their car." (SX MTS 1 08:00:04).

Myers then proceeded to get Watts out of the truck. (RR4 18; SX MTS 1 08:00:04). Approximately 15 seconds later, Royston opened the truck passenger door. (RR4 74 - 75; SX1 08:00:15). Royston then approached Watts and asked if there was a gun in the truck. (RR4 79 - 80). She replied, "not that I am aware of." (RR4 80; SX1 08:01:53). Royston testified that at this point he had decided to search the truck for weapons. (RR4 80).

Myers learned there were some unrelated municipal warrants for Watts. (RR4 20 - 21). She was arrested. (RR4 21). Myers had previously determined there were no warrants for Appellant during his encounter with him two hours before. (RR4 37). Neither officer witnessed any traffic offense. (RR4 38, 86). Both officers testified that at the time of the stop they had no reasonable suspicion that Appellant was involved in any crime. (RR4 43, 86).

**III. Physical Search of the Truck.**

After Myers arrested Watts on the warrants, Royston removed Appellant and the passenger from the truck. (RR4 81). He patted both down looking for weapons

and found none. (RR4 81). His basis for the search was the box of ammunition. (RR4 81 - 82). He noticed after removing the occupants from the truck that the ammunition box had been moved from where he saw it previously. (RR4 82, 104).

Royston physically searched the truck finding a .357 caliber pistol in a backpack between the two front seats along with ammunition clips for other guns and additional types of ammunition. (RR4 83). The .45 caliber ammunition box was found under the back seat. (RR4 238). Royston also found a glass pipe he suspected was used to smoke methamphetamine and a marijuana "grinder." (RR4 84). Further search of the truck by a canine unit located suspected drugs in a cigarette package between the driver's seat and the front console. (RR4 528).

Although he was seated next to the back pack with the gun and near the cigarette package, the passenger was released at the scene. (RR4 132, 209, 213).

## IV. Additional Evidence Unrelated to Stop and Search.

Appellant was transported to jail and searched upon arrival. (RR4 255). More suspected drugs were discovered underneath Appellant's "scrotum." (RR4 255 - 256). Both the substance from the cigarette package and that seized at the jail were tested and found to be methamphetamine. (RR5 149; SX 25). The aggregate amount consisted of 10.45 grams. (RR5 147; SX 25).

Appellant's driver's license and additional ammunition and ammunition clips were found in a red bag in a closed area of the pickup truck. (RR4 239 - 240). The clips matched those found in the black bag containing the pistol. (RR5 117). Video from a police car recorded Appellant asking the passenger to take responsibility. (RR5 109 - 114; SX 25 09:01:30) Although Appellant denied to police that the bag was his, (RR4 239), he described it as his bag in a recorded phone call from the jail. (RR5 188; SX 26).

**V. Jury Charge and Verdict.**

Appellant requested two charges under Art. 38.23, Tex. Code Crim. Proc. (2013). (RR6 5 - 10). The trial court denied an instruction concerning Officer Myers' reasonable suspicion to stop Appellant. (RR6 17). The court did, however, grant an instruction concerning whether Officer Royston saw the box of bullets. (RR6 17 - 18).

The jury found Appellant guilty of both offenses. (RR6 86). Appellant elected for the trial judge to decide punishment. (RR6 89). After a punishment hearing where the trial court found two enhancement allegations to be true, Appellant was sentenced to 30 years in each case to run concurrently. (RR7 75). Appellant appealed the judgment of conviction to this Court.

## SUMMARY OF ARGUMENT

**1. Point One.** The stopping officer was led to believe by his dispatcher that there was a warrant for a female in Appellant's truck. What the dispatcher was actually told by the caller was that the female had not been charged with any offense and that any incident occurred several days prior at another location. Under the collective knowledge doctrine information known to all officers involved in an investigation can be used to justify a stop even if the officer making the stop does not know each specific fact supporting the stop. Conversely, there is a duty on law enforcement to ensure they have accurate information and to communicate that information properly. While it has not been addressed in Texas, many other jurisdictions have applied this collective knowledge doctrine to not just permit detentions but also to prohibit detentions when law enforcement fails to ensure it has accurate information and communicate this to the detaining officer.

**2. Point Two.** When the suspicion that justifies a stop is dispelled it is improper to extend a detention further. Here, the stopping officer determined within minutes that Appellant was not involved in any offense concerning the female. He admits this fact by informing the other officer that Appellant ". . . had nothing to do with it . . ." The detention should have ceased at that point.

# IN THE COURT OF APPEALS

# FOR THE THIRD SUPREME JUDICIAL DISTRICT

# OF TEXAS

———

ERNEST PEREZ, Appellant

VS.

THE STATE OF TEXAS, Appellee

———

## APPELLANT'S BRIEF

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

COMES NOW Ernest Perez, Appellant, through counsel, Ken Mahaffey, and respectfully submits this Brief.

## STATEMENT OF THE CASE

This is a case where Appellant challenges the stop of his truck because the police dispatcher led stopping officer to believe there was an arrest warrant when the 911 caller he relied upon explicitly told him that the person had not been charged. Appellant also challenges extension of the detention after it was determined that he was not involved in the incident the officer was investigating. Appellant now respectfully tenders this brief on appeal.

1

POINT OF ERROR NUMBER ONE:

**Because the dispatcher failed to tell the stopping officer that there was no arrest warrant for suspect he was seeking, the officer lacked reasonable suspicion to stop Appellant's vehicle.**

## ARGUMENT AND AUTHORITIES

**I. Overview**.

Police received a call that they should detain a particular person for allegedly breaking a car windshield wiper several days prior to the call. That call also related that the caller had reported the incident and there was no charge against the individual. This information, while known to the dispatcher, was not conveyed to the officer who initiated the stop. Because he was not sufficiently informed, he was also confused as to whether the event had just occurred. Essentially, the officer based his stop on the belief that there was a warrant for the arrest of the identified person. The "collective knowledge" doctrine will support a finding of reasonable suspicion for a stop when other officers have information that would permit a fellow officer to make a stop even when that officer does not know all the underlying facts. Appellant submits this collective knowledge also imparts a duty on law enforcement to use all that information to protect citizens from improper stops. The officer should have been

told there was no charge or arrest warrant.

## II. The call to police did not justify a stop.

A recording of the 911 call was offered by the State and admitted at trial. (RR4 145; SX 1). In this call, the caller said there was a lady named Kristin Watts who had damaged her car by removing her windshield wiper. She said the police had previously told her to call if she saw Watts because she had not been arrested or charged. Specifically, the caller said "I know she has not been charged with that case yet." (SX1 2:42). The fact that Ms. Watts had not been charged with an offense was not relayed to Samuel Myers, the officer who stopped Appellant's truck to detain Watts. Instead, Myers testified he was told the caller thought there was a warrant for Watts' arrest. (RR4 12, 18, 165).

## III. Collective Knowledge Doctrine implies correct information.

When there has been some cooperation between law enforcement officers, reasonable suspicion for a stop can be supported by the collective information available to all officials involved in the investigation. *Jackson v. State*, 745 S.W.2d 4, 8 (Tex. Crim. App. 1988). However, that information still must be accurate to support the stop. *Whiteley v. Warden*, 401 U.S. 560, 569 (1971). Here, the dispatcher knew there were no charges pending against Watts but did not communicate that fact

3

to the stopping officer. The officer then proceeded on inaccurate information believing there was a warrant for Watts. The question is to what extent does law enforcement owe a duty to communicate accurate information.

**IV. Failure to communicate complete information not litigated in Texas.**

The closest corollary in Texas Jurisprudence is a case from the 2nd District Court of Appeals. *See O'Bryan v. State*, 464 S.W.3d 875 (Tex. App.- Fort Worth 2015, pet. ref'd). In *O'Bryan*, *supra*, the defendant was stopped based on a report the car he was driving was stolen. *Id.* at 875. The report had been withdrawn but police did not update their records. *Id*. The Court decided the issue based on cases where police were entitled to rely on reasonably reliable sources of information like NCIC reports of stolen vehicles citing *Brown v. State*, 986 S.W.2d 50, 54 (Tex. App. - Dallas 1999, no pet.) ("it is not necessary for the NCIC database of stolen vehicles to be accurate on every occasion for an NCIC hit to establish probable cause").

The situation here is very different. Here, the dispatcher did not rely on any reasonably reliable data base. The dispatcher was told by the caller that some unidentified police officer had allegedly told the caller to contact police she saw Watts. But, most importantly, the caller told the dispatcher Watts had not been charged. This key information was not communicated to the stopping officer who was

4

led to believe there was a warrant for Watts' arrest.

**IV. Collective Knowledge Doctrine should apply both "Permissively and Prohibitively."**

O'Bryan, *supra,* did not reach the issue of whether the collective knowledge rule should be applied both "permissively and prohibitively." *Id*. at 875. The Court noted that Texas has applied the doctrine "permissively" to justify stops based on collective information. *Id*. This means that collective information that could support a conclusion of reasonable suspicion would "permit" a proper stop. Appellant argues that communication of collective wrong information should also "prohibit" a finding of reasonable suspicion.

While Texas has not decided this issue, other jurisdictions have plainly applied the doctrine both "permissively" and "prohibitively." For instance in Kentucky, the courts held collective knowledge should also apply to erroneous information not corrected by police so an improper report of a stolen vehicle would not support a stop. *See Jameson v. Commonwealth*, 2012-CA-1478-MR (Ct. App. Ky. September 27, 2013). Many other state courts have agreed. *See e.g*., **Washington**: *State v. O'Cain*, 31 P.3d 733, 108 Wn.App. 542, 556 (Wash.App. Div. 1 2001)(incorrect information concerning whether car stolen required suppression of illegally possessed firearm); **New Jersey**: *State v. Moore*, 614 A.2d 1360, 1362, 260 N.J.Super. 12, 16

(N.J.Super.A.D. 1992)("While the officer who made the arrest no doubt did so blamelessly and in good faith reliance on the records. . .," arrest under a recalled warrant was illegal); **Maryland**: *Ott v. State*, 600 A.2d 111, 119 325 Md. 206 (Md. 1992)(collective knowledge doctrine includes duty to communicate withdrawal of a warrant); **Arizona**: *State v. Peterson*, 830 P.2d 854, 171 Ariz. 333, 336 (Ariz.App. Div. 1 1991)(execution of withdrawn warrant required suppression); **California**: *People v. Ramirez*, 668 P.2d 761, 765 (Cal. 1986)(suppressing evidence obtained by arrest on withdrawn warrant); **Colorado**: *People v. Fields*, 785 P.2d 611 (Colo.1990) (arrest pursuant to incorrect computer information invalid and required suppression); **Massachusetts**: *Commonwealth v. Hecox*, 35 Mass.App.Ct. 277, 619 N.E.2d 339, 344 (1993)(arrest on warrant for which bail was already posted improper); **Florida**: *Albo v. State*, 477 So.2d 1071 (Fla. App. 3 Dist. 1985)("just as the police may permissibly act upon their collective knowledge, so they are restrained by their collective ignorance.").

Moreover, the U.S. Supreme Court also spoke definitively on this issue in *Whiteley v. Warden*, 401 U.S. 560, 569 (1971). There the Court acknowledged the arresting officer acted with pure motives when he executed a warrant. *Id*. However, because the warrant affidavit stated no facts that would support a probable cause determination, the arrest was invalid. *Id*. *Whiteley*, *supra*, is still good law despite

6

some later authority addressing "good faith" reliance on improper information.

**V. Good faith not applicable.**

All of the above cited cases from other jurisdiction rejected the good faith rule of *United States v. Leon*, 468 U.S. 897 (1984)(officer may properly rely in good faith on an otherwise valid search warrant even if issued on less than probable cause). They rejected application of the rule because there is an expectation that law enforcement must maintain integrity in the information it compiles itself and acts upon. The Court in *Hecox*, *supra*, considered decisions from other states and concluded succinctly ". . . *Leon* did not allow law enforcement authorities to rely on an error of their own making." *Id.* 619 N.E.2d at 342. Texas should be no different.

**VI. Stop not supported by reasonable suspicion.**

Because law enforcement has responsibility to disseminate complete and accurate information, the stop was not supported by reasonable suspicion. *Whiteley v. Warden*, 401 U.S. 560, 569 (1971). Here, the stopping officer was misled by his dispatcher to believe there was a warrant for Kristin Watts for criminal mischief. Appellant was not observed committing any sort of traffic or criminal offense. If not for this incorrect information, there was no reason to stop him. Therefore, the stop violated his right to be free of unreasonable searches and seizures. *See* U.S. CONST.

7

AMEND. IV. The evidence should have been suppressed.

POINT OF ERROR NUMBER TWO:

**When moments after the stop, the officer learned Appellant was not involved in the investigation he was undertaking any extension of the detention was improper.**

## ARGUMENT AND AUTHORITIES

### I. Introduction.

Appellant's truck was stopped by officer Samuel Myers solely on the suspicion that a caller to 911 said Kristin Watts had committed criminal mischief and had a warrant for her arrest. (RR4 13 - 14). Neither Myers nor the backup officer, Daniel Royston observed any traffic violation or criminal activity by Appellant. Appellant's truck contained Appellant, a male passenger and Watts. Moments after the stop, Myers spoke with the caller. At that point, he determined that any suspicion focused only Watts. Indeed, the video records Myers telling Royston, "[T]he guys didn't do anything except that she happens to be in their car." (SX1 08:00:04). Any reason for Appellant's continued detention ended at that point.

### II. Warrantless detentions should not exceed the purpose of the stop.

"An investigative stop must be temporary and must not last longer than

8

necessary to accomplish the purpose of the investigation." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997), *quoting Florida v. Royer*, 460 U.S. 491, 500 (1983). "This limitation means that once the reason for the stop has been satisfied, the stop may not be used as a 'fishing expedition for unrelated criminal activity'" *Id.*, *quoting Ohio v. Robinette,* 519 U.S. 33, 117 (1996). "Consequently, a detention that is not temporary and reasonably related in scope to the circumstances which justified the interference, is unreasonable and, thus violative of Appellant's right to be free of unreasonable searches and seizures. *See* U.S. CONST. AMEND. IV; *Davis, supra,* at 243.

### III. Any reason for detaining appellant was dispelled when officers determined appellant was not involved in the incident being investigated.

This case is similar to *Davis v. State*, 947 S.W.2d 240 (Tex. Crim. App. 1997). In *Davis,* the defendant was initially stopped for suspicion of driving while intoxicated. *Id.* at 241. The officers did not detect any odor of alcohol or intoxication. *Id*. Nevertheless, the officers continued to detain the defendant for unrelated questioning. *Id*. Because the reason for the initial detention was resolved, the Court of Criminal Appeals held any evidence seized during the continued detention should have been suppressed. *Id*. 246; *see also St. George v. State*, 237 S.W.3d 720, 727 (Tex. Crim. App. 2007) (continued questioning of passenger after citation issued to

9

driver improperly prolonged the detention and warranted suppression of evidence).

Federal Courts have reached similar conclusions. In *United States v. Valadez*, 267 F.3d 395 (5th Cir. 2001), the defendant was stopped to see if his registration sticker was valid and to determine if his window tinting was legal. *Id*. at 398. These were the only reasons for the detention and the suspicion of both violations. *Id*. The officer's investigation dispelled any suspicion of either violation. *Id*. As a result, subsequent questioning whether he had a firearm in the car exceeded the scope of that detention. *Id*. The firearms had to be suppressed. *Id.* at 398 - 399. The same result is necessary here because the detaining officers had already determined that Appellant was not involved in the incident they were investigating and any evidence discovered as a result of the continued detention should have been suppressed.

**IV. Further Detention Based on Observation of Bullet Box Unwarranted.**

At trial, the State argued further detention was necessary because Officer Royston had observed a box of bullets in the truck. (RR4 111). It is not a violation of law to possess bullets in one's car. The officer even agreed this was so. (RR4 60). While at least one case has held continued detention was justified when an officer observed a bullet in a stopped vehicle, that case had many other factors not present in this situation. *See Morfin v. State*, 34 S.W.3d 664 (Tex. App. - San Antonio 2000,

10

no pet.).

In *Morfin, supra*, an officer observed a car stopped in a dark area of a ". . . very high crime that was one block away from a bar that was a Mexican Mafia hangout." *Id.* at 666. The officer had responded to calls at that location ". . . for everything from murder to public intoxication." *Id.* When he spotlighted the car he observed the defendant fumbling around with something on the floor board. *Id.* When checking the occupant's identification he observed a bullet on the center console. *Id.* The court held a detention and search was justified at that point. *Id.* at 668.

The facts here are very different. There was no evidence that Appellant was in a dark high crime area. Indeed, he was at an ordinary 7-11 convenience store open for business. (RR4 12, 50). The video also shows it was well lit. (SX MTS 1). Officer Myers knew there were no warrants for Appellant because he had encountered him two hours earlier in an unrelated incident. (RR4 37). Neither officer observed any furtive movements inside the truck. While Myers did allege Appellant may have had a gang association he did not give any basis for that opinion. (RR4 25). Indeed, later evidence presented to the trial court indicated this information was untrue. *See* DX 2 (not suspected of gang membership). Under the totality of the circumstances, the continuing detention based on observing a box of bullets was improper.

**V. Conclusion - the stop was improperly prolonged beyond its original purpose.**

Once the suspicion that justified an initial stop had been dispelled, continued detention violates the Fourth Amendment. *St. George v. State*, 237 S.W.3d 720, 727 (Tex. Crim. App. 2007); *Davis v. State*, 947 S.W.2d 240, 246 (Tex. Crim. App. 1997); *United States v. Valadez*, 267 F.3d 395, 398 - 399 (5th Cir. 2001). Here, at the point the stopping officer concluded Appellant was not involved in the incident the officer was investigating, there was no justification for further detention. It is not against the law to possess bullets in a vehicle and no other factor indicated that Appellant was committing a crime or posed a danger to the officers or any other person. The detention was improperly extended to fish for evidence of another crime. The evidence should have been suppressed.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that the judgment of conviction be reversed and the matter be remanded to the trial court for a new trial.

Respectfully Submitted,

Ken Mahaffey

Ken Mahaffey
Counsel for Appellant
P.O. Box 684585
Austin, Texas 78768
Phone & Fax (512) 444-6557
St. Bar. No. 12830050
*Ken_Mahaffey@yahoo.com*

## CERTIFICATE OF SERVICE AND WORD COUNT COMPLIANCE

The above signature certifies that on December 9, 2015, this document was sent by electronic service to the Hays County D.A.'s Office, 712 S. Stagecoach Trail, San Marcos TX 78666 and to Ernest Perez, 02016895, 295 I.H. 45 North, Huntsville, TX 77320-8443. The above signature also certifies that this document contains 4893 words in compliance with Rule 9.4, Tex. R. App. Proc. (2015)(not to exceed 15,000 words).