

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00507-CR

———————————————————

TRENTON MARCUS BROWN, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 7
Tarrant County, Texas
Trial Court No. 1545505

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury convicted Trenton Marcus Brown of theft of property valued between $750 and $2,500 and assessed his punishment at 180 days' confinement in the county jail. After the trial court sentenced Brown, he appealed and, in one issue, asserts that the trial court erred by denying his motion to suppress. We affirm.

### Evidence

Luis Mejia and his neighbor, Juan Tovar, lived on Stanley Avenue. Mejia testified that during the early morning hours on May 9, 2018, he saw some people removing the wheels from his neighbor's vehicle and putting them in a white pickup, so he instructed his wife to call the police. After the white pickup left, the police arrived. Mejia did not know in which direction the white pickup had driven after leaving, and he denied pointing to help the police locate the suspect vehicle.

Tovar, Mejia's neighbor, testified that in the early morning hours of May 9, 2018, Mejia knocked on his door and woke him up. Once outside, Tovar discovered his 2018 Chevy Silverado on bricks; Tovar denied giving anyone permission to take his wheels.

Officer Jeremy Mendoza testified that on May 9, 2018, around 1:50 a.m., he was dispatched to a burglary call involving a white pickup, and on his way to the scene, he saw a white pickup with something—he could not tell what—in its back. After arriving at the scene on Stanley Avenue, Officer Mendoza saw some people pointing toward James Avenue, which was the next street running parallel to Stanley

2

Avenue. Officer Mendoza then radioed Officer Jackson, who was in a separate vehicle behind Officer Mendoza, to stop the white pickup, and Officer Jackson did so. Officer Mendoza maintained that he had reasonable suspicion to detain the white pickup because (1) there were no other vehicles in the area, (2) people were pointing in the direction in which Officer Jackson stopped the white pickup, and (3) the white pickup was the only vehicle coming from the scene of the offense. Officer Mendoza acknowledged that it was possible that another white pickup was in the area but added that Brown's vehicle was the only one he was aware of.

On the video showing the stop, though, Officer Jackson stated that the reason he detained the white pickup was because its license plate was obstructed. At trial, Officer Mendoza acknowledged that the license plate was not obstructed.

## Brown's Issue

Brown contends that Officer Jackson individually and Officers Jackson and Mendoza collectively did not have reasonable suspicion to pull him over and that the trial court thus erred by denying his motion to suppress.

## Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex.

App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we defer almost totally to the trial court's rulings on (1) questions of historical fact, even if the trial court determined those facts on a basis other than evaluating credibility and demeanor, and (2) application-of-law-to-fact questions that turn on evaluating credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

**Applicable Law**

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards the

5

detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Id.*

The collective-knowledge doctrine (also known as the fellow-officer rule) is the principle that an investigative stop or an arrest is valid even if the law-enforcement officer lacks personal knowledge to establish reasonable suspicion or probable cause, provided the officer is acting on another officer's knowledge and law enforcement's collective knowledge. *O'Bryan v. State*, 464 S.W.3d 875, 879 (Tex. App.—Fort Worth 2015, pet. ref'd) (relying on *Fellow-Officer Rule*, Black's Law Dictionary (10th ed. 2014)). The United States Supreme Court first discussed this doctrine in 1971 in the context of probable cause to support an arrest and later extended it to encompass reasonable suspicion to detain a person briefly when attempting to obtain further information. *Id.* (relying on *Whiteley v. Warden*, 401 U.S. 560, 568, 91 S. Ct. 1031, 1037 (1971), *abrogated on other grounds by Arizona v. Evans*, 514 U.S. 1, 13, 115 S. Ct. 1185, 1193 (1995), and *United States v. Hensley*, 469 U.S. 221, 229, 105 S. Ct. 675, 680 (1985)).

**Discussion**

Brown contends that the officer who actually detained him—Officer Jackson—did not have reasonable suspicion. Specifically, he asserts that Officer Jackson's stated reason for stopping him—an obstructed license plate—turned out to be wrong. But Officer Jackson was not working alone; rather, he was working with another officer, so whether Officer Jackson individually had reasonable suspicion is not dispositive. *See O'Bryan*, 464 S.W.3d at 879 (quoting *Fellow-Officer Rule*, Black's Law

6

Dictionary, for the proposition that "an investigative stop . . . is valid even if the law-enforcement officer lacks personal knowledge to establish reasonable suspicion . . . as long as the officer is acting on the knowledge of another officer . . . .").

Next, Brown argues that Officers Jackson and Mendoza, even acting together, did not have reasonable suspicion. Brown contends that the only identifying information that Officer Mendoza had was a white pickup and that such information was too generic to provide reasonable suspicion.

But Officer Mendoza was looking for more than just a generic white pickup. He was looking for the white pickup with items in its truck bed coming from the scene of a theft that Officer Mendoza himself had passed while en route to the offense location and that persons at the scene (even if Mejia was not one of them) had indicated to him was the pickup involved in the theft. And Officer Mendoza was looking for a white pickup that was still in the immediate area and that was fortuitously heading toward Officer Jackson, who was following Officer Mendoza in another patrol car. The time was around 1:50 a.m.—a time consistent with very light traffic—and Officer Mendoza denied seeing any other white pickups in the area. Based on Officer Mendoza's testimony that he instructed Officer Jackson to detain Brown's white pickup, we hold that the trial court did not err by ruling that Officers Mendoza and Jackson collectively had reasonable suspicion to stop Brown's vehicle. *See Kelly*, 204 S.W.3d at 818–19; *O'Bryan*, 464 S.W.3d at 879.

We overrule Brown's issue.

## Conclusion

Having overruled Brown's sole issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 22, 2019